[No. G037363. Fourth Dist., Div. Three. Jan. 24, 2008.]

NEELOFER SAXENA et al., Plaintiffs and Appellants, v.
WILLIE H. GOFFNEY, Defendant and Appellant.

[No. G037392. Fourth Dist., Div. Three. Jan. 24, 2008.]

WILLIE H. GOFFNEY Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY Respondent;
NEELOFER SAXENA et al., Real Parties in Interest.

## COUNSEL

Strecker Law Offices and Marc S. Strecker for Plaintiffs and Appellants and for Real Parties in Interest.

Cole Pedroza, Curtis A. Cole, Kenneth R. Pedroza, Matthew S. Levinson; Schmid & Voiles, Susan Schmid, Sidney Jerald Martin; Thelan Reid & Priest and Brian M. Hom for Defendant and Appellant and for Petitioner.

Horvitz and Levy, David Axelrad and Wendy S. Albers for California Medical Association, California Hospital Association and California Dental Association as Amici Curiae on behalf of Defendant and Appellant and Petitioner.

No appearance for Respondent.

## OPINION

**IKOLA, J.**—Plaintiffs are the widow and two children of the decedent, Rajesh Saxena. Saxena died in February 2003 after seeking treatment from Dr. Willie H. Goffney for an open wound on his right leg. Plaintiffs brought a wrongful death action against Goffney (and others involved in Saxena's medical care) for wrongful death, negligence, and battery. The jury concluded Goffney was negligent in the diagnosis or treatment of Saxena and that he performed a procedure on Saxena without his "informed consent." The jury awarded plaintiffs $12.1 million in noneconomic damages, over $600,000 in economic damages, and allocated 100 percent of the fault to Goffney.

Goffney moved for judgment notwithstanding the verdict (JNOV) on plaintiffs' battery claim. He also moved for a new trial and to conform the judgment to the Medical Injury Compensation Reform Act (MICRA). Despite concluding the special verdict form—prepared by plaintiffs and given at their request—did not require the jury to determine whether Goffney committed a battery, the court denied the JNOV motion. Instead, it granted a new trial on plaintiffs' battery and informed consent negligence claims, and on damages.

The court denied Goffney's motion for new trial on plaintiffs' negligence cause of action and declined to consider Goffney's MICRA motion.

Goffney appeals the denial of his JNOV motion. Plaintiffs cross-appeal the order partially granting a new trial. In a separate petition, Goffney seeks a writ of mandate and/or prohibition compelling the court to grant his motion for new trial on plaintiffs' negligence claim. We consolidate the writ petition with the appeals to promote judicial efficiency and avoid piecemeal adjudication of the issues.[1]

■ We conclude the court should have granted Goffney's JNOV motion. Accordingly, we reverse the JNOV and new trial orders. We remand with directions to grant Goffney's JNOV motion on the battery claim, to consider Goffney's MICRA motion, and to enter the resulting judgment for plaintiffs on the negligence claims and for Goffney on the battery claim. We deny Goffney's writ petition.

## FACTS

In January 2003, Saxena sought treatment from Goffney at the La Palma Wound Center (Wound Center) for an open wound in his right leg. The plan was for Goffney, a general surgeon, to perform a series of debridements—a surgical procedure used to remove dead or infected tissue from an open wound—on Saxena's leg. Goffney would then cover the wound with Apligraf, a synthetic skin-like substitute, to promote healing. During his initial appointment with Goffney, Saxena signed a consent form authorizing Goffney to evaluate, assess, and treat his wound.

Goffney performed debridements on January 13, 23, and 27. By early February, however, Saxena's heath declined: The wound on his leg was bleeding constantly; he was using crutches; he had a fever; and he was having difficulty breathing. During an appointment on February 3, Saxena complained to Goffney that he had chills and a fever. Goffney concluded Saxena had the flu and performed another debridement. Saxena's wife, Neelofer Saxena, took Saxena to the emergency room on February 5 because he continued to have a fever.

Saxena was scheduled to return to the Wound Center on February 10 for the final debridement and Apligraf application. That morning, Neelofer felt Saxena's health was getting "worse and worse" so she tried, unsuccessfully,

---

[1] We grant Goffney's unopposed motion for judicial notice of the record submitted in case No. G037363. (*Stephenson v. Drever* (1997) 16 Cal.4th 1167, 1170, fn. 1 [69 Cal.Rptr.2d 764, 947 P.2d 1301]; Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) We also grant plaintiffs' unopposed motion to augment the record. (Cal. Rules of Court, rule 8.155(a).)

to reschedule the appointment. At the request of a nurse in Goffney's office, Neelofer brought Saxena to the Wound Center that evening. According to Neelofer, she listened as Saxena told Goffney he wanted to postpone the debridement and Apligraf procedure. Neelofer also testified she "begged and pleaded" for Goffney to postpone the procedure until her husband regained his strength. In response, Goffney explained he would have to throw out the Apligraf—which cost $1,200—if he did not use it that day. He debrided the wound, applied the Apligraf, and sent Saxena and Neelofer home. Saxena died the following day of congestive heart failure.

Plaintiffs alleged wrongful death and negligence claims against Goffney and others. The first amended complaint added a battery claim against Goffney. The battery cause of action alleged Goffney "performed medical procedures on [Saxena] without his informed consent. These medical procedures included intentional, unlawful and harmful contact by said Defendants." Plaintiffs further alleged "[a]s a direct and proximate result of the battery [Saxena] suffered injuries resulting in death." The court overruled Goffney's demurrer to the battery claim, concluding the allegations were sufficient to state a cause of action.

Trial proceeded against Goffney only. After the close of evidence, Goffney moved for a nonsuit on plaintiffs' battery claim. The court denied the motion. The court then gave the jury two instructions on the battery claim. The first instruction, based on former Judicial Council of California Civil Jury Instructions (2006) CACI No. 530, recited the elements of battery as follows: "Plaintiffs claim that [Goffney] committed a battery. To establish this claim, Plaintiffs must prove all of the following: [¶] 1. That [Goffney] performed a medical procedure without [Saxena's] consent; [¶] 2. That [Saxena] was harmed; and [¶] 3. That [Goffney's] conduct was a substantial factor in causing [Saxena's] harm. [¶] A patient can consent to a medical procedure by words or conduct." Over Goffney's objection, the court also gave the jury a special instruction on plaintiffs' battery claim which provided: "If you find that [Goffney] performed a surgical procedure on [Saxena] or provided other medical treatment to [Saxena] without his informed consent, you may find [Goffney] liable for battery, even if you find that the surgery was skillfully performed and he was not negligent."

The court presented plaintiffs' version of the special verdict form to the jury. The special verdict form asked the jury to answer the following questions: (1) "Was [Goffney] negligent in the diagnosis or treatment of [Saxena]?"; (2) "Was [Goffney's] negligence a substantial factor in causing the death of [Saxena]?"; (3) "Did [Goffney] perform a debridement and Apligraf procedure on [Saxena] on February 10, 2003?"; (4) "Did [Saxena] give his informed consent for the debridement and Apligraf procedure on

February 10, 2003?"; (5) "Would a reasonable person in [Saxena's] position have refused the debridement and Apligraf procedure if he or she had been fully informed of the possible results and risks of the procedure, and alternatives to the procedure?"; (6) "Would [Saxena] have consented to the . . . procedure performed on him on February 10, 2003 even if he had been given enough information about the risks of the procedure?"; and (7) "Was [Saxena] harmed as a consequence of a result or risk that [Goffney] should have explained before the debridement and Apligraf procedure was performed?"[2] Questions eight through 14 of the special verdict form asked the jury to calculate plaintiffs' damages.

The jury returned a verdict for plaintiffs. It concluded Goffney was negligent in the diagnosis or treatment of Saxena and that Goffney performed the debridement and Apligraf procedure on February 10 without Saxena's informed consent. The jury also determined Saxena would have refused the debridement and Apligraf procedure on February 10 had he been fully informed of the possible risks of, and the alternatives to, the procedure.

After the verdict was rendered but before judgment was entered, Goffney moved for JNOV on plaintiffs' battery claim and for a new trial. Goffney also filed a motion to conform the judgment to MICRA. The court denied the JNOV motion. Instead, it ordered a new trial on the battery and lack of informed consent negligence claims, and on damages. The court concluded the special verdict form did not require the jury to make a finding on battery and that plaintiffs' special jury instruction was "manifestly prejudicial" to Goffney because it improperly blended the legal doctrines of battery and negligence. The court also determined the damages award could not stand because of the instructional error, the deficiencies in the special verdict form, and the jury's failure to apportion damages between the battery and negligence claims. The court denied Goffney's new trial motion on plaintiffs' negligence claims.

## DISCUSSION

*The Court's Denial of Goffney's JNOV Motion Was Erroneous*

We turn first to the court's denial of Goffney's JNOV motion. As an initial matter, we reject plaintiffs' contention that the court's denial of the

---

[2] All of the questions on plaintiffs' special verdict form are taken from the CACI verdict forms for medical negligence. For example, questions one and two are almost identical to the questions on verdict form 500 for "Medical Negligence." (See CACI VF-500.) Questions three through seven are taken from verdict form 501, entitled, "Medical Negligence—Informed Consent—Affirmative Defense That Plaintiff Would Have Consented Even If Informed." (See CACI VF-501.)

motion is not appealable because the issue of damages "remain[s] before the trial court for determination." An appeal may be taken from an order denying a motion for JNOV even where the trial court has granted, or denied, a new trial motion. (Code Civ. Proc., §§ 629, 904.1, subd. (a)(4); see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2007) ¶ 2:146, p. 2-72.4.)

Goffney contends the court's denial of his JNOV motion was erroneous because there was insufficient evidence he committed battery or intended to harm Saxena. We need not reach these issues because we agree with Goffney's third basis for reversal: The jury's special verdict did not include any findings on plaintiffs' battery cause of action.[3]

### The Informed Consent Doctrine

■ To place the issues in context, we briefly discuss the distinction between negligence and battery as set out by the California Supreme Court in *Cobbs v. Grant* (1972) 8 Cal.3d 229, 241–242 [104 Cal.Rptr. 505, 502 P.2d 1] (*Cobbs*). An action "should be pleaded in negligence" when the doctor performs an operation to which plaintiff consents, but without disclosing sufficient information about the risks inherent in the surgery. (*Id.* at pp. 240–241.) "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented." (*Id.* at p. 240.)

■ Our high court has made it clear that battery and lack of informed consent are separate causes of action. A claim based on lack of informed consent—which sounds in negligence—arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives. In contrast, a battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent. (See, e.g., *Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.* (2003) 107 Cal.App.4th 1260, 1266 [132 Cal.Rptr.2d 855] [a battery "is an intentional and offensive touching of a person who has not consented to the touching"]; *Perry v. Shaw* (2001) 88 Cal.App.4th 658, 664 [106 Cal.Rptr.2d 70] [doctor committed battery—a claim distinct from professional negligence—when he "performed

---

[3] With the benefit of hindsight, Goffney did not need to file a JNOV because, as we will conclude, the jury made no findings supporting a battery claim, and thus a judgment could not have been entered for battery. Because the court granted a partial new trial before judgment was entered, Goffney never had the opportunity to object to any form of judgment which would have potentially reflected a judgment for battery. And Goffney was legitimately concerned the court would view the findings on lack of informed consent as supporting a battery judgment because the court had earlier overruled his objections that plaintiffs were improperly conflating negligence and battery.

an operation to which [plaintiff] did not consent"]; *Warren v. Schecter* (1997) 57 Cal.App.4th 1189, 1194 [67 Cal.Rptr.2d 573] [discussing statute of limitations for "medical malpractice action arising out of a failure to obtain informed consent to surgery"]; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 634 [178 Cal.Rptr. 167] [battery "should be reserved for those circumstances where a doctor performs an operation to which the patient has not consented"].)[4]

### *The Special Verdict Form Was Fatally Defective Because It Did Not Require the Jury to Make a Finding on Plaintiffs' Battery Claim*

We analyze the special verdict form de novo. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 678 [24 Cal.Rptr.3d 338] [" '[A] special verdict's correctness must be analyzed as a matter of law.' "].) A "special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (Code Civ. Proc., § 624.)[5] " 'The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. "[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . ." ' " (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960 [17 Cal.Rptr.2d 242] (*Myers*); see also *Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 854–855 [239 Cal.Rptr. 862] (*Falls*).)

A special verdict is "fatally defective" if it does not allow the jury to resolve every controverted issue. (*Fuller-Austin Insulation Co. v. Highlands Ins. Co.* (2006) 135 Cal.App.4th 958, 1005–1006 [38 Cal.Rptr.3d 716] (*Fuller-Austin*); *Myers, supra,* 13 Cal.App.4th 949, 959–960.) *Myers* is instructive. There, the owner of a building and its general contractor filed cross-complaints against each other for breach of contract, fraud, and other claims. By special verdict, the jury concluded the building owner breached its

---

[4] After the parties filed their respective opening briefs, the Judicial Council of California issued a revised jury instruction pertaining to medical battery. The revised instruction, CACI No. 530A, requires a plaintiff pursuing a medical battery claim to prove, among other things, that defendant "performed a medical procedure without [plaintiff's] *informed consent.*" (CACI No. 530A, italics added.) In contrast, CACI No. 530, the former jury instruction for medical battery, required the plaintiff to prove the defendant "performed a medical procedure without [plaintiff's] consent." (Former CACI No. 530.) The Use Note to CACI No. 530A does not indicate a reason for requiring plaintiff to prove a lack of *informed* consent rather than lack of any consent. We believe the use of the phrase "informed consent" in the current jury instruction blurs the distinction between negligence and battery as described by our high court in *Cobbs, supra,* 8 Cal.3d at pages 241–242.

[5] Unless noted, all further statutory references are to the Code of Civil Procedure.

contract with the general contractor, and awarded the general contractor punitive damages. (*Myers*, at p. 956.) The Court of Appeal struck the punitive damages award because "[n]o special verdict findings were submitted to the jury on any cause of action except breach of contract, even though [the general contractor] had pleaded a cause of action against [the building owner] for . . . fraud." (*Id.* at p. 958.) According to the *Myers* court, the punitive damages award could not be sustained because the jury "was neither requested to nor [made] the necessary factual findings" for a tort verdict. (*Id.* at p. 960.)

*Fuller-Austin, supra,* 135 Cal.App.4th at pages 1005–1006, reached a similar result. That case concerned the reasonableness of an insured's bankruptcy settlement and the effect of its reorganization plan on its excess insurers. The trial court entered judgment in favor of the insured, and a jury calculated the amount of the insurers' liability. (*Id.* at p. 966.) The appellate court reversed the jury's liability findings. (*Id.* at p. 1006.) It concluded the special verdict form was "fatally defective" because it "did not require the jury to make any finding on the issue of [the] reasonableness" of the reorganization plan. (*Id.* at p. 1005.) As the *Fuller-Austin* court explained, "[T]he jury's finding that [the insured] was not guilty of inequitable misconduct did not answer the distinctly different question of whether the Plan was unreasonable." (*Id.* at p. 1006.)

The same is true here. The jury concluded Goffney performed the debridement and Apligraf procedure on February 10 without Saxena's "informed consent" by answering "no" to the following question: "Did [Saxena] give his *informed consent* for the debridement and Apligraf procedure performed on February 10, 2003?" (Italics added.) The special verdict form did not require the jury to answer the separate and distinct question of whether Goffney performed the procedure with "no consent" at all. Because the special verdict form did not require the jury to make a finding on battery, it "is like a puzzle with pieces missing; the picture is not complete." (*Falls, supra,* 194 Cal.App.3d at p. 855.)

Plaintiffs offer several arguments urging us to overlook the deficiencies in the special verdict form, all of which fail. First, plaintiffs contend the use of the phrase "informed consent" in question four of the verdict form "made no functional difference" because lack of informed consent and lack of any consent are the same. This argument has no merit for the reasons discussed above. Moreover, the related questions on the verdict form dealt with lack of informed consent, not the lack of any consent. Thus, the jury found a reasonable person in Saxena's position would have refused the procedure if he or she had been fully informed of the risks, and Saxena would not have consented to the procedure had he been given enough information about the

risks. Further, the cases plaintiffs cite to support their contention are inapposite because they either concern conditional consent, a theory plaintiffs did not pursue here, or address situations where a doctor's fraudulent misrepresentations about a proposed procedure vitiated the patient's consent. (See *Ashcraft v. King* (1991) 228 Cal.App.3d 604, 609–610 [278 Cal.Rptr. 900]; *Rains v. Superior Court* (1984) 150 Cal.App.3d 933, 938 [198 Cal.Rptr. 249].)

Plaintiffs also contend the "only interpretation [of the verdict] consistent with the evidence" is the jury concluded Saxena did not consent to the procedure. We disagree. At plaintiffs' request, the court instructed the jury it could find Goffney liable for battery if he performed the procedure without Saxena's *informed* consent. This instruction conflated the theories of negligence and battery: It allowed the jury to find Goffney liable for battery by concluding he performed the procedure without Saxena's consent, or by concluding Saxena consented without sufficient information.[6] Performing a medical procedure without informed consent is not the same as performing a procedure without any consent. But the verdict form read as a whole unmistakably relates to the lack of informed consent. Because it is impossible to determine how the jury would have resolved the battery issue had it been instructed properly and had it been asked to answer the question of whether Goffney performed a procedure without Saxena's consent, we will not " ' "speculate upon the basis of the verdict." ' " (*Bracisco v. Beech Aircraft Corp.* (1984) 159 Cal.App.3d 1101, 1108 [206 Cal.Rptr. 431].)[7] Instead, we will read the verdict to mean what it says. The jury found Goffney did not have Saxena's informed consent when Goffney performed the procedure on February 10 and that Saxena would not have consented to the procedure had he been given enough information about the risks.

We also reject plaintiffs' argument that Goffney waived his right to challenge the special verdict form. Goffney is not challenging the special verdict form as such. He merely argues the verdict form submitted by plaintiffs, and the verdict returned by the jury, does not support entry of judgment on a battery theory. Moreover, courts have declined to apply the waiver rule "where the record indicates that the failure to object was not the

---

[6] In the trial court, plaintiffs conceded the jury's conclusion regarding the "lack of informed consent" could mean Saxena did not consent to the procedure, or that he consented, but without enough information about the risks of, and alternatives to, the procedure. Indeed, plaintiffs' counsel admitted that—"if [he] had it to do over"—he would take out the word "informed" from question four on the special verdict form.

[7] We reject plaintiffs' argument that the defects in the verdict form are immaterial because substantial evidence supports a finding of battery. In *Myers, supra,* 13 Cal.App.4th at page 961, the court rejected a similar argument and held that "the fact that the evidence might support such a finding" cannot save a special verdict form where the jury does not render an "actual verdict" on a cause of action.

result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.' " (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456, fn. 2 [72 Cal.Rptr. 217, 445 P.2d 881]; see 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 385, pp. 438–439 ["failure to raise the objection [to special verdict form] does not always result in a waiver; some element of negligence or culpability must appear"].) There is no waiver here because Goffney raised the issue in the trial court. He alerted the court to the difference between medical negligence and battery in his demurrer to plaintiffs' battery cause of action and he also objected to plaintiffs' special jury instruction on the grounds that it "confuses [the issue of] informed consent with battery." As defense counsel explained, under *Cobbs*, "lack of informed consent is medical negligence. Lack of consent, period, is a battery in the medical context. [The special jury instruction] tends to equate both of those" legal theories. Goffney also raised the error in his motion for new trial. Although he did not object to the phrase "informed consent" in the special verdict form, there is no indication Goffney failed to object as part of a litigation strategy or to gain a technical advantage. He tried, but failed, to persuade the court it was allowing plaintiffs to conflate the distinct legal theories of negligence and battery. It was plaintiffs' responsibility to tender their case to the jury. If plaintiffs chose to submit a verdict form tendering less than their full case to the jury, Goffney had no further incentive to object.

Plaintiffs cite *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 131 [41 Cal.Rptr.2d 295] (*Jensen*), for the proposition that a party always waives any error regarding a special verdict form by failing to object to it before the court discharges the jury. In *Jensen*, a jury awarded damages for BMW's failure to comply with the Song-Beverly Consumer Warranty Act (Act; Civ. Code, § 1790 et seq.). The trial court denied BMW's motion for new trial and BMW appealed, contending the special verdict form was defective because it "failed to submit for jury resolution the primary issue of BMW's liability under the Act." (35 Cal.App.4th at p. 131.) The Court of Appeal affirmed, holding the special verdict form was not prejudicially defective and, in any event, BMW had waived its right to challenge the form by not objecting before the jury was discharged. (*Ibid.*)

*Jensen* is inapposite. There, the jury was allowed to award damages without first being asked if BMW was liable for violating the Act. BMW wanted the jury to find it was liable before awarding damages, but it did not ensure the question was in the verdict form. Here, and unlike BMW, Goffney did not want the jury to conclude he committed a battery, so he had no obligation to ensure that questions on the verdict form addressed plaintiffs' battery claim.

Plaintiffs' next contention—that the invited error doctrine precludes Goffney from challenging the special verdict form—is also unavailing. The

" 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*).) The purpose of the doctrine is to "prevent a party from misleading the trial court and then profiting therefrom in the appellate court." (*Ibid.*) Plaintiffs, not Goffney, invited the error. The jury did nothing more than follow the explicit instructions in the special verdict form, which plaintiffs' counsel prepared. If plaintiffs wanted the jury to answer additional questions when navigating the special verdict form, they should have included them. They did not and, as a result, they are bound by the defective special verdict form. (*Myers, supra*, 13 Cal.App.4th at p. 960, fn. 8.)

We note Goffney submitted a similar verdict form. But Goffney had already lost his argument on plaintiffs' erroneous special battery instruction and his motion for a nonsuit had already been denied. Plaintiffs were responsible for pursuing an erroneous battery theory both in the special instruction and in the verdict form. Plaintiffs received what they asked for: A verdict establishing liability for medical negligence and nothing more. Even if we assume, for the sake of argument, that Goffney caused the defective verdict form, the invited error doctrine does not apply. The doctrine does not extend to situations where a party induces the commission of the error, but does "not in fact mislead the trial court in any way—as where a party ' " 'endeavor[s] to make the best of a bad situation for which [it] was not responsible.' " ' " (*Norgart, supra*, 21 Cal.4th at p. 403; see also *Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 706 [17 Cal.Rptr.3d 397] ["the invited error doctrine requires affirmative conduct demonstrating a deliberate tactical choice on the part of the challenging party . . ."]; *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 908 [114 Cal.Rptr.2d 708].) Here, there is no evidence Goffney made a deliberate tactical choice to keep quiet about the verdict form at trial and then profit from it on appeal, nor is there any evidence Goffney misled the trial court. In fact, the opposite is true: Goffney repeatedly—but unsuccessfully—advised the court about the differences between lack of any consent and lack of informed consent.

■ The court below was troubled by the failure of the special verdict form to address plaintiffs' battery claim. In its order denying the JNOV motion, the court noted the distinction between negligence and battery and "the absence, in the special verdict, of any findings that defendant committed a battery, even though the jury was presented with evidence of that intentional tort." The court's analysis of the problem was correct. Its solution, however, was not. The proper way to remedy the defective verdict was to grant Goffney's motion for JNOV on plaintiffs' battery claim, not to order a new trial. (See *Myers, supra*, 13 Cal.App.4th at p. 960, fn. 8.) "The grounds

for a new trial are wholly statutory, and there is no inherent power in the trial court to grant a new trial." (8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 19, p. 524.) Simply put, Goffney's claim that the special verdict form did not include a finding on plaintiffs' battery claim was not a ground for a new trial under any provision of section 657.

*The Court's Denial of Goffney's Motion for New Trial Was Not an Abuse of Discretion; The Court's Exclusion of Two Defense Witnesses Was Harmless Error*

The court declined to grant a new trial on plaintiffs' negligence claim because it concluded the errors in the verdict form and special jury instruction "did not infect the jury's finding that [Goffney] breached the standard of care; nor was there any irregularity in that finding." The court also determined it properly excluded the testimony of Dr. Gary Flashner and nurse James Palmer, two defense witnesses. In his writ petition, Goffney contends a new trial on the negligence claim will "cure the evidentiary error of excluding [Flashner and Palmer]." Goffney contends Flashner and Palmer "would have rebutted plaintiffs' testimony . . . that . . . Saxena was not a candidate for surgery." Specifically, Goffney argues Flashner (who treated Saxena during his February 5 emergency room visit) would have testified Saxena did not display any symptoms of congestive heart failure. Palmer, who apparently was present during the February 10 debridement and Apligraf procedure, would have testified Saxena was breathing normally and that neither Saxena nor Neelofer asked Goffney to postpone the procedure.[8]

The court's exclusion of Flashner and Palmer stemmed from Goffney's failure to identify them during discovery. Plaintiffs served Judicial Council of California Form Interrogatory No. 12.1 (Interrogatory 12.1), which asked

---

[8] Goffney also contends the court's denial of a new trial on the negligence claim was an abuse of discretion because (1) the verdict on plaintiffs' negligence claim was "tainted" by the defective special verdict and the erroneous special jury instruction; and (2) there is confusion regarding the "theory and facts [on which] the jury's 'negligence' finding was based." We disagree. Goffney acknowledges "[p]laintiffs' evidence offered the jury three different bases for finding Dr. Goffney was negligent." Goffney has failed to cite any persuasive authority entitling him to clarify his "confusion." The jury unambiguously found both negligence and lack of informed consent negligence based on substantial evidence. One of plaintiffs' expert witnesses testified that the "medical probability is that failing to diagnose Mr. Saxena's problems, and complicating that with proceeding with an elective procedure in the face of Mr. Saxena's underlying illness, contributed significantly to his death within the next 12 to 24 hours." Another expert testified Saxena "was at high risk. And this is because he had a respiratory rate of 36, which is highly predictive of ventilatory problems later. Having an elevated respiratory rate is an extremely serious issue. Having a diagnosis of heart failure puts one at a very high risk." The jury could reasonably find from this testimony both ordinary medical negligence in Goffney's failure to diagnose and his failure adequately to explain the risks to Saxena. No greater "clarity" is required.

Goffney to provide the name, address, and telephone number for each individual who "witnessed the incident or the events occurring immediately before or after the incident"; "who made any statement at the scene of the incident"; "who heard any statements made about the incident by any individual at the scene"; or who "has knowledge of the incident." In response, Goffney stated he was "not aware of any witnesses to decedent's medical care other than those individuals identified in her [*sic*] medical records." Goffney also failed to identify Flashner and Palmer in response to Judicial Council of California Form Interrogatory No. 15.1 (Interrogatory 15.1), which asked Goffney to list all witnesses having information supporting his denial of all material allegations and his affirmative defenses. In his response to that interrogatory, Goffney stated, "it is anticipated that some or these entire affirmative defense [*sic*] will be supported by documents in [*sic*] decedent's medical records that are available to all parties."

Ten days before trial, apparently as part of the pretrial "issue conference" required by local court rule, plaintiffs served a motion in limine for an order excluding the testimony of "witnesses not identified in discovery."[9] The motion was nonspecific; neither Flashner, nor Palmer, nor any other potential witness was identified. Also, apparently as part of the same issue conference pursuant to local rule, Goffney listed Flashner and Palmer on his trial witness list. On the first day of trial, Goffney served a supplemental response to Interrogatory 12.1 listing 16 names, including Flashner and Palmer, but failing to provide their contact information. The record on appeal does not contain any information regarding the court's ruling, if any, on the motion in limine, but Goffney's counsel referred to the anticipated testimony of Flashner and Palmer during his opening statement without objection by plaintiffs. Near the conclusion of plaintiffs' case, however, when Goffney announced that Flashner and Palmer would be his witnesses for the next day, plaintiffs objected. After hearing argument, the court excluded the testimony of both witnesses.

In his motion for new trial, Goffney argued excluding Flashner and Palmer was "highly prejudicial" because they would have "rebutted [p]laintiffs' claim that Mr. Saxena's health was so impaired that the debridement and Apligraf procedure should not have been performed." Goffney also claimed his failure to list Flashner and Palmer in his interrogatory responses was not a "[m]isuse[] of the discovery process" under section 2023.010. Presumably relying on *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270, 274 [105 Cal.Rptr. 276] (*Thoren*), the court concluded that excluding Flashner and

---

[9] Orange County Superior Court Rules, rule 450, requires the parties to exchange witness lists, motions in limine, and other pretrial documents 10 days before trial, and to file the documents and motions with oppositions to the motions no later than noon of the Friday before trial.

Palmer—whom it characterized as witnesses with regard to the two issues that were "among the most important at the trial"—was proper because their identities were "well known" to Goffney when he responded to plaintiffs' interrogatories and because Goffney "unjustifiably failed to list them in his responses."

" 'Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion.' " (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639 [92 Cal.Rptr.2d 115].) The court's " 'discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered.' " (*Id.* at p. 640.) Even where a trial court improperly excludes evidence, the error does not require reversal of the judgment unless the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) Goffney has the burden to demonstrate it is reasonably probable a more favorable result would have been reached absent the error. (§ 475; *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432 [77 Cal.Rptr.2d 574] (*Tudor Ranches*).) As we discuss below, the court abused its discretion by excluding the testimony of Flashner and Palmer. But we cannot, on the record before us, conclude the court's exclusion of the two defense witnesses was prejudicial.

■ Precluding a witness from testifying at trial is proper where a party *willfully and falsely* withholds or conceals a witness's name in response to an interrogatory. (*Thoren, supra,* 29 Cal.App.3d at p. 274.) "Where the party served with an interrogatory asking the names of witnesses to an occurrence then known to him deprives his adversary of that information by a *willfully false response,* he subjects the adversary to unfair surprise at trial."[10] (29 Cal.App.3d at p. 274, italics added.) Under these circumstances, "an order barring the testimony of the witness must be sustained as a sanction . . . ." (*Ibid.*)

We note *Thoren* "does not stand for the proposition that evidence may be excluded based on the mere failure to supplement or amend an interrogatory answer that was truthful when originally served." (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1325 [22 Cal.Rptr.3d 282]; see also *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 356–357 [44 Cal.Rptr.3d 426].) Nor does *Thoren* stand for the proposition that evidence

---

[10] The discovery provision at issue in *Thoren,* former section 2034, subdivision (d), provided that "if . . . a party *willfully* fails to serve and file answers to interrogatories . . . the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof . . . or impose such other penalties of a lesser nature as the court may deem just . . . ." (Stats. 1968, ch. 188, § 3, pp. 477–479, as amended; repealed by Stats. 1986, ch. 1334, § 1, p. 4700, italics added.)

may be excluded on the ground an interrogatory answer is evasive or incomplete. The Civil Discovery Act (§ 2016.010 et seq.) provides specific remedies for evasive or incomplete discovery responses. The imposition of an evidence sanction is not one of the remedies.

 Section 2030.300, subdivision (a)(1), provides that the party propounding an interrogatory may file a motion to compel a further response where the answer received is "evasive or incomplete." And the failure timely to file a motion to compel a further response to an evasive or incomplete answer constitutes a waiver of any right to a further response. (§ 2030.300, subd. (c).) The prevailing party on a motion to compel further responses is limited to an award of monetary sanctions. (§ 2030.300, subd. (d).) An evidence sanction is available *only* where the responding party "fails to obey an order compelling further response to interrogatories." (§ 2030.300, subd. (e).)

 The Civil Discovery Act also warns, however, that the failure to respond to discovery, or the making of evasive responses to discovery, is not condoned. The "[f]ail[ure] to respond . . . to an authorized method of discovery" (§ 2023.010, subd. (d)), and "[m]aking an evasive response to discovery" (§ 2023.010, subd. (f)) are defined as "[m]isuses of the discovery process." (§ 2023.010.) But the *sanctions* for misuse of the discovery process are limited "[t]o the extent authorized by the chapter governing any particular discovery method or any other provision of [the Civil Discovery Act]." (§ 2023.030.) Thus, the sanctions available to remedy evasive or incomplete responses to *interrogatories* are limited to those contained in chapter 13 of the Civil Discovery Act (§ 2030.010 et seq.).

The *Thoren* case involved conduct not specifically covered by the Civil Discovery Act—serving a willfully false answer to an interrogatory. Giving a willfully false answer is not even included in the Civil Discovery Act's definitions of a "misuse of discovery," unless the prohibition against causing "unwarranted annoyance, embarrassment, or oppression, or undue burden and expense" (§ 2030.090, subd. (b)) is broadly construed. (See § 2023.010, subd. (c).) The *Thoren* court, relying on a *former* provision of the Civil Discovery Act, approved the exclusion of a witness's testimony as a sanction for giving a willfully false answer, likening the false answer to no answer at all. (*Thoren, supra,* 29 Cal.App.3d at p. 274 ["A willfully false answer to an interrogatory must be treated as the equivalent of no answer at all . . ."].) The discovery statute then extant authorized the imposition of an evidence sanction for the willful failure to serve and file answers to interrogatories. (See fn. 10, *ante*.) While current law continues to treat a failure to respond to discovery as a "misuse of the discovery process" (§ 2023.030; see § 2023.010, subd. (d)), the imposition of an evidence sanction is now conditioned upon

the violation of an order compelling the response (§§ 2023.030, 2030.290, subd. (c)). Thus, current law has replaced the former requirement for the imposition of an evidence sanction—that the failure to respond was "willful"—with the requirement that the responding party violated an order compelling the response.

■ Although the statutory basis for the imposition of an evidence sanction has changed, *Thoren* has never been overruled. Its application, however, is narrow, covering a circumstance not specifically dealt with in the Civil Discovery Act. Thus, in the absence of a violation of an order compelling an answer or further answer, the evidence sanction may only be imposed where the answer given is *willfully false*. The simple failure to answer, or the giving of an evasive answer, requires the propounding party to pursue an order compelling an answer or further answer—otherwise the right to an answer or further answer is waived and an evidence sanction is not available. "[T]he burden is on the propounding party to enforce discovery. Otherwise, no penalty attaches either for the responding party's failure to respond or responding inadequately!" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 8:1136, p. 8F-59.)

■ The party moving to exclude evidence as a sanction for discovery abuse has the initial burden of establishing grounds supporting the request. (Evid. Code, § 500.) Where, as here, the court has not issued an order compelling a response or further response to an interrogatory (and where such an order has not been violated), the party moving for the exclusion of evidence has the burden of establishing the answer given by the responding party was willfully false, i.e., *intentionally not true*. Here, Goffney's responses to Interrogatories 12.1 and 15.1 directed plaintiffs to look in Saxena's "medical records" to determine the identities of individuals with knowledge of the incident, or who had information supporting Goffney's affirmative defenses. Plaintiffs presented no evidence establishing or implying these answers were untrue, i.e., that Flashner's and Palmer's names were *not* contained within medical records in plaintiffs' possession. It was plaintiffs' burden to do so, and they failed. Goffney's interrogatory answers were incomplete and evasive, and clearly merited the issuance of an order compelling further answers and an award of monetary sanctions. But plaintiffs failure to seek such an order constituted a waiver of any right to a further response. (§ 2030.300, subd. (c).) As discussed above, in the absence of a violation of an order compelling further answers, incomplete and evasive answers are themselves an insufficient basis to exclude evidence. Accordingly, the court erred in excluding Flashner's and Palmer's testimony.

The error, however, was harmless. "[W]here evidence is improperly excluded, the error is not reversible unless ' "it is reasonably probable a result

more favorable to the appellant would have been reached absent the error." ' " (*Tudor Ranches, supra*, 65 Cal.App.4th 1422, 1431–1432.) Goffney offered Flashner's testimony as evidence that Saxena did not display any symptoms of congestive heart failure during his February 5 emergency room visit. But Dr. Ronald Neuman, Goffney's medical standard of care expert, described in substantial detail Flashner's observations of Saxena's condition on February 5, as reflected in Flashner's medical chart notes of that visit. This testimony included a description of Saxena's complaints as recorded by Flashner (fever and neck discomfort). Flasher's chart showed Saxena had a normal respiration rate of 18; dry lips and mucous membranes; clear lungs; normal respiratory effort; skin not adequately hydrated; and a heart rate of 117. The chart contained no indication of respiratory distress. Flashner also ordered a chest X-ray; the X-ray was diagnosed as "normal." Dr. Flasher's February 5 chart notes came into evidence through Neuman's testimony without objection and without any request for a limiting instruction. Under these circumstances we perceive no prejudice arising from the exclusion of Flashner's live testimony.

Goffney offered Palmer's testimony as evidence that Saxena was breathing normally at the time of the February 10 procedure, and that neither Saxena nor Neelofer asked Goffney to postpone the procedure. The latter point has little, if any, relevance in light of plaintiffs' failure to tender the battery issue to the jury. As to the proffered testimony concerning Saxena's respiration, the jury was made aware of the measured respiration rate of 36 noted on Saxena's February 10 medical chart. Plaintiffs' medical experts described a respiration rate of 36 as abnormally elevated; Goffney described the rate as normal if Saxena had been engaging in strenuous activity near the time the respiration was measured. Goffney also testified Saxena did not exhibit shortness of breath on February 10, and Goffney's expert testified the elevated rate as recorded was inconsistent with Saxena's other vital signs. In light of the objective measurement of Saxena's respiration rate, the medical debate concerning its significance or accuracy, Goffney's testimony regarding his observation of normal respiration, and Neelofer's testimony regarding Saxena's shortness of breath, the addition of Palmer's testimony, given three years after his actual observation, would have added little persuasive force to the other evidence presented to the jury.

Accordingly, it is not reasonably probable Goffney would have received a more favorable result had Flashner and Palmer testified. The exclusion of their testimony does not constitute reversible error.

## DISPOSITION

The order denying the JNOV motion and partially granting a new trial is reversed and remanded with directions to the court to: (1) grant Goffney's

JNOV motion on the battery claim; (2) hear and decide Goffney's MICRA motion; and (3) enter the resulting judgment for plaintiffs on the negligence claims and for Goffney on the battery claim. Goffney's writ petition is denied. In the interests of justice, each party shall bear its own costs of appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied April 30, 2008, S161452.