Filed 3/10/26  Belman v. Los Bagres Corp. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LORENA BELMAN, | B332423 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VC065875) |
| v. | |
| LOS BAGRES CORPORATION et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian F. Gasdia, Judge. Affirmed.

Payne & Fears and Clifford L. White for Defendants and Appellants.

Law Offices of Timothy J. Donahue and Timothy J. Donahue for Plaintiff and Respondent.

Defendants and appellants Los Bagres Corporation (Los Bagres) and Juan Erasmo Garcia (collectively, appellants) appeal from the judgment entered on a jury verdict finding them liable for wrongful termination of plaintiff and respondent Lorena Belman (respondent). Appellants contend the judgment is void due to defects in the special verdict form, jury instructions and because of respondent's failure to exhaust her administrative remedies. We conclude appellants fail to establish reversible error and affirm the judgment.[1]

## BACKGROUND

### Respondent's employment and lawsuits

Respondent was employed from approximately 2006 to 2016 as a waitress for Los Bagres, who operated a restaurant/bar/nightclub in Pico Rivera, California, called A Mi Hacienda. Juan Erasmo Garcia, Los Bagres's chief executive officer, was in charge of supervising and managing A Mi Hacienda. Garcia's duties included supervising respondent's work.

On April 6, 2016, respondent left her employment with Los Bagres, claiming she was assaulted and sexually harassed. Juan Erasmo Garcia averred he was in a consensual intimate relationship with respondent, initiated by respondent in 2014. Respondent claimed Juan Erasmo Garcia engaged in unwanted touching, sexual comments, and sexually explicit text messages. Respondent acknowledged having sexual relations with Juan

---

[1] However, we deny respondent's motion for sanctions for frivolous appeal because it has not been shown that this appeal is substantively baseless or brought solely to cause delay. (Cal. Rules of Court, rule 8.276(a).)

Erasmo Garcia beginning in 2011 due to his threats of withholding her pay and terminating her employment.

In October 2016, respondent brought a lawsuit against appellants, asserting wrongful termination and wage-and-hour claims. Respondent's causes of action for wrongful termination included a *Tameny*[2] claim under California common law and a claim under the Fair Employment and Housing Act (FEHA). Respondent alleged her coworkers—Gizzelle Cabrera, Mariela Garcia, and Jesus Erasmo Garcia—attacked her at A Mi Hacienda on April 6, 2016.[3] Respondent also alleged she was forced against her will to have sexual relations with Juan Erasmo Garcia. Respondent averred her employment was wrongfully terminated due to these incidents. In December 2016, respondent filed an amendment to complaint naming Los Bagres as a Doe defendant.[4]

Respondent's complaint attached the Department of Fair Employment and Housing's (DFEH) notice of filing of

---

[2] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177–178 (*Tameny*) (holding at-will employees may recover tort damages from their employers for being discharged in contravention of fundamental public policy).

[3] Cabrera, Mariela Garcia, and Jesus Erasmo Garcia are not parties to this appeal.

[4] Respondent also filed an "amended cross/cross-complaint" in October 2017 and a "second amended cross/cross[-]complaint" in November 2017. These cross-complaints contained substantially the same allegations as the underlying pleadings, but they included additional causes of action for violation of Labor Code section 2802, negligence per se (Lab. Code, § 3602), and unfair business practices (Bus. & Prof. Code, § 17200). These cross-claims were neither submitted to nor decided by the jury.

discrimination complaint and right-to-sue letter.[5] Los Bagres was not named as a respondent in the notice to the DFEH, which only named Garcia and Gallarzo Property Holdings, LLC, Juan Erasmo Garcia, and two other individuals.[6]

In February 2018, respondent brought a second lawsuit in the Los Angeles County Superior Court (VC066907) against Juan Erasmo Garcia, Cabrera, Mariela Garcia, and Jesus Erasmo Garcia. This second action was based on the same underlying allegations in the first lawsuit but included a variety of other tort claims. In March 2019, this lawsuit was consolidated with the first lawsuit, with the latter being designated as the lead case. Ultimately, only the battery claim against Cabrera and Jesus Erasmo Garcia in this lawsuit was submitted to and decided by the jury.

**The trial**

Trial commenced in February 2023. The claims submitted to and decided by the jury were the *Tameny* and FEHA causes of action for wrongful termination against appellants and the battery claim against Cabrera and Jesus Erasmo Garcia.[7] There were separate jury instructions providing the respective elements

---

[5]    In 2022, the DFEH was renamed the Civil Rights Department. (Sen. Bill No. 189 (2021–2022 Reg. Sess.); Stats. 2022, ch. 48, § 30.) We will continue to refer to the agency as the DFEH for consistency with the record and appellate briefs.

[6]    Respondent filed a first amended complaint (FAC) in May 2017, which contained substantially the same allegations. The FAC did not include an amended filing with the DFEH naming Los Bagres as a respondent.

[7]    Mariela Garcia was dismissed from the action in June 2019 following her successful motion for judgment on the pleadings.

4

of the *Tameny* and FEHA causes of action. A special verdict form was used that included findings for each claim.

The jury trial ended on March 7, 2023. Appellants and Cabrera were found liable, while Jesus Erasmo Garcia was found to not be liable. The jury awarded $303,000 in total damages against appellants and Cabrera.

On May 3, 2023, the trial court issued a statement of decision. The statement of decision involved respondent's various requests for attorney's fees and other nonjury issues. The court indicated respondent was entitled to a discretionary award of attorney's fees for her FEHA claim under Government Code section 12965, subdivision (c)(6).[8] The court found the evidence at trial, as well as the parties' four stipulations and the jury's affirmative answers to the first six questions in the special verdict form, required appellants to be strictly liable for the sexual harassment under Government Code section 12940, subdivision (j)(1).

Judgment was entered on June 14, 2023. A total amount of $196,750 in damages was awarded against appellants and Cabrera, jointly and severally.[9] Appellants timely appealed.[10]

---

[8] Government Code section 12965, subdivision (b), which contains no attorney's fees provision, was mistakenly cited in the statement of decision.

[9] The trial court reduced the original $303,000 damages award by $106,250 to account for amounts respondent received from her workers' compensation settlement.

[10] Appellants erroneously filed a second notice of appeal on August 22, 2023, which they later abandoned.

## CONTENTIONS ON APPEAL

Appellants assert four main arguments. First, appellants contend the judgment as to the FEHA claim is void because the special verdict form did not include all of the required elements of the FEHA claim. Second, appellants argue the jury instructions were incomplete and prejudicial because they failed to include instructions defining "severe or pervasive" conduct. Third, appellants assert the judgment against Los Bagres is void because respondent failed to exhaust her administrative remedies by naming Los Bagres in her DFEH complaint. Finally, appellants maintain the judgment is void because the special verdict form is hopelessly ambiguous and inconsistent as it combines damages for multiple claims involving distinct parties.

## DISCUSSION

### I. Appellants fail to show reversible error as to the special verdict form and jury instructions

#### A. *Standard of review and applicable law*

"We analyze the special verdict form de novo." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325 (*Saxena*).) "'When a special verdict is involved as here, a reviewing court does not imply findings in favor of the prevailing party. [Citations.] This rule stems from the nature of a special verdict and its "'recognized pitfalls,'" namely, that it requires the jury to resolve all of the controverted issues in the case, unlike a general verdict which merely implies findings on all issues in one party's favor.'" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242.)

As to reviewing jury instructions, "[w]hether a jury instruction is correct or erroneous is a question of law." (*TRC*

*Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1098 (*TRC Operating Co.*).) "Challenges to jury instructions are subject to a de novo standard of review." (*Sander/Moses Productions, Inc. v. NBC Studios, Inc.* (2006) 142 Cal.App.4th 1086, 1094.) "However, '[i]t is the responsibility of counsel to propose correct instructions and the court has no duty to modify erroneous instructions submitted to it, and there is no error if it simply rejects such instructions.'" (*Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1055.) "[A]n appellant must demonstrate that any alleged error in the jury instructions was prejudicial, i.e., that it was probable the appellant would have achieved a more favorable result without the error." (*Ibid.*) "Generally, the appropriate remedy for an instructional error that is prejudicial is a reversal of the judgment and a remand for a new trial." (*TRC Operating Co., supra*, at p. 1098.)

**B.** ***The special verdict form contains sufficient factual findings to support the FEHA claim***

Appellants contend the judgment as to the FEHA claim should be reversed because the special verdict form failed to include each required element of the claim. We disagree.[11]

"A 'special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them;

---

[11] Respondent contends appellants waived challenges to the alleged defects in the special verdict form and their failure to object constituted invited error. The waiver rules, however, do not apply to issues involving an absence of a factual finding necessary to support a cause of action. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 531–532 (*Behr*).) Further, the invited error doctrine does not apply to a party's failure to object to a special verdict form. (*Saxena, supra*, 159 Cal.App.4th at pp. 328–329.)

and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law.'" (*Saxena, supra*, 159 Cal.App.4th at p. 325.) "If a fact necessary to support a cause of action is not included in such a special verdict, judgment on that cause of action cannot stand." (*Behr, supra*, 193 Cal.App.4th at p. 531.) "A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Saxena, supra*, at p. 325.)

To establish unlawful harassment under FEHA, the employee must show (1) an employee was subjected to harassing conduct because of the employee's protected status; (2) the harassing conduct was severe or pervasive; (3) a reasonable person in the employee's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; (4) the employee considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive; (5) the employer knew or should have known of the conduct and failed to take immediate and appropriate corrective action; (6) the employee was harmed; and (7) the conduct was a substantial factor in causing the employee's harm. (CACI No. 2521A.)

Appellants argue the special verdict form lacks findings the harassing conduct was "severe or pervasive" and that such conduct was objectively and subjectively hostile. While the special verdict form does not use the specific terms "severe or pervasive," it contains the finding, "the working conditions [were] so intolerable that a reasonable person . . . would have had no reasonable alternative except to resign." The "working conditions" here are the conditions in which respondent was "subjected to unwanted sexual harassment based upon her

8

gender." The foregoing language encompasses the findings needed to determine severe or pervasive conduct, which is defined as "conduct that alters the conditions of employment and creates a work environment that is hostile, intimidating, offensive, oppressive, or abusive." (CACI No. 2524.) To show conduct was severe or pervasive, "[i]t is sufficient to prove that a reasonable person who was subjected to the harassing conduct would find that the conduct so altered working conditions as to make it more difficult to do the job." (*Ibid*.)

Thus, the special verdict form contains the required reasonable person and altered work conditions findings by indicating respondent's work conditions, i.e., the harassing conduct, were so intolerable as to effectively force a reasonable person to resign. The jury found facts establishing an altered work condition making the job more difficult in that a reasonable person in respondent's circumstances would have effectively been forced to resign due to the intolerable work conditions. While the precise terms constituting "severe or pervasive" are not used in the special verdict form, the facts needed to make a finding of the element are reflected in the form's language.

As to the subjective component to the claim, the special verdict form includes the finding the sexual harassment was "unwanted" and respondent resigned because of the harassing conduct. These factual findings necessarily show the element of the claim that respondent herself considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. We note the jury instructions set forth each element of the claim, including this subjective component. To the extent there is any ambiguity in the special verdict form, appellants waived those defects by failing to object to them in the underlying

9

proceedings. (See *Behr, supra*, 193 Cal.App.4th at pp. 529–530.) Accordingly, the special verdict form is not fatally defective because it did not preclude the jury from resolving each controverted issue.

**C.    *Appellants waived defects as to the finding of damages, which is not fatally inconsistent***

Appellants also argue the special verdict form is fatally inconsistent, or "hopelessly ambiguous," because it combines damages for multiple parties and claims, making it impossible to determine the amount of damages attributable to any particular defendant or claim.

"A party who fails to object to a special verdict form ordinarily waives any objection to the form." (*Behr, supra*, 193 Cal.App.4th at p. 530.) "Failure to object to a verdict before the discharge of a jury and to request clarification or further deliberation precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected." (*Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 521.) "The forfeiture rule generally applies in all civil and criminal proceedings. [Citations.] The rule is designed to advance efficiency and deter gamesmanship." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264 (*Keener*).) "'""'The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . .'""'" (*Ibid.*) "'""'The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate

10

them, and the result would be that few judgments would stand the test of an appeal."'"'" (*People v. Simon* (2001) 25 Cal.4th 1082, 1103.)

There are exceptions to waiver. (*Behr, supra*, 193 Cal.App.4th at p. 530.) "Waiver is not found where the record indicates that the failure to object was not the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.'" (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456, fn. 2.) "Nor is an objection required when the verdict is fatally inconsistent." (*Behr, supra*, at p. 530.)

We conclude appellants waived their arguments as to the alleged defects in the jury's finding of damages because appellants failed to raise these issues in the underlying proceedings. Indeed, appellants concede they agreed to the form and never objected to any defects, nor did they raise any issues with the verdict. Appellants suggest the alleged defects in the special verdict form were simply overlooked and their failure to object was not due to their desire to gain a technical advantage. However, this does not establish the record affirmatively showed appellants' failure to object was not to gain an advantage. For example, there are no facts showing confusion on this issue among the parties and/or the trial court preventing appellants from raising an objection.

The special verdict form clearly contains no language or areas prompting the jury to assign specific amounts of damages to each defendant. The damages found are clearly not specifically allocated among the defendants. Hence, appellants cannot claim these alleged defects in the form and the finding of damages were not apparent. Appellants' silence on this issue is consistent with an intention to withhold the matter to later gain a technical

11

advantage. And appellants' assertions here are entirely at odds with the purposes of the waiver doctrine, which requires errors be timely brought before the court so they can be corrected or avoided. (See *Keener, supra*, 46 Cal.4th at p. 264.) If a party can simply remain silent on an issue and later claim it was overlooked, certainly the doctrine would almost never apply.

Further, the special verdict form is not fatally inconsistent, or "hopelessly ambiguous," merely because specific amounts of damages were not assigned to each defendant. "'"If the verdict is ambiguous the party adversely affected should request a more formal and certain verdict. Then, if the trial judge has any doubts on the subject, he may send the jury out, under proper instructions, to correct the informal or insufficient verdict."'" (*Behr, supra*, 193 Cal.App.4th at pp. 529–530.) "If the verdict is merely ambiguous, a party's failure to request a correction or clarification of the verdict before the jury is discharged may amount to a waiver of the ambiguity or defect, particularly if the party's failure to object was to reap a 'technical advantage' or to engage in a '"litigious strategy."'" (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092, fn. 5 (*Zagami*).)

The lack of allocation of damages among the defendants here merely presents ambiguity in the jury's findings, not fatal inconsistency. While the specific amount of damages that should be assigned to each defendant is unclear, the findings do not contain any irreconcilable contradictions. Indeed, the finding of damages can reasonably be interpreted to mean the defendants are jointly liable for the same amount. Any lack of clarity on this matter needed to be addressed in the underlying proceedings before the jury was discharged. This, appellants failed to do. As discussed above, mere ambiguity may be waived and any

12

inconsistency being challenged must be fatal. (See *Behr, supra*, 193 Cal.App.4th at p. 530; *Zagami, supra*, 160 Cal.App.4th at p. 1092, fn. 5.) Accordingly, appellants waived their arguments on this issue because they merely establish an ambiguity, not an irreconcilable contradiction, in the verdict.[12]

### D. *Appellants failed to object to the jury instructions*

Appellants posit the jury instructions were incomplete and prejudicial because they failed to include instructions defining "severe or pervasive" conduct. However, "'a jury instruction which is incomplete or too general must be accompanied by an objection or qualifying instruction to avoid the doctrine of waiver.'" (*Carrau v. Marvin Lumber & Cedar Co.* (2001) 93 Cal.App.4th 281, 297.) A failure to object to jury instructions will only not be deemed a waiver "where the instruction is prejudicially erroneous as given, that is, which is an incorrect statement of the law." (*Id.* at p. 296.)

Here, appellants do not claim there were any erroneous statements of the law in the jury instructions. Instead appellants maintain the jury instructions were incomplete because they had no definition of "severe or pervasive" conduct. Accordingly, we conclude appellants waived their arguments on this issue concerning the jury instructions.

In short, appellants fail to show how the alleged defects in the special verdict form and the jury instructions constitute reversible error. The elements appellants claim are missing in

---

[12] Appellants also contend the judgment improperly imposes joint and several liability among the defendants. The record does not show appellants ever objected to the judgment on this issue in the trial court. Thus, appellants waived this issue here. (See *Keener, supra*, 46 Cal.4th at p. 264.)

13

the special verdict form for the FEHA claim are reflected entirely in the findings of fact described in the form. Appellants waived arguments as to the finding of damages in the special verdict form because they failed to raise the issue and the damages award is not fatally inconsistent. Moreover, appellants waived arguments as to the jury instructions because they failed to object and do not show any erroneous statements of law in the instructions.

## II. Appellants waived their arguments as to respondent's failure to exhaust administrative remedies

### A. *Standard of review and applicable law*

"'We apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case.'" (*Monterey Coastkeeper v. Monterey County Water Resources Agency* (2017) 18 Cal.App.5th 1, 12.) Further, "[q]uestions of subject matter jurisdiction are questions of law, which are reviewed de novo." (*Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 780.)

"'The exhaustion of administrative remedies doctrine "bars the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all."'" (*McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 76.)

### B. *Respondent's failure to exhaust administrative remedies did not divest the trial court of subject matter jurisdiction*

Appellants argue the judgment against Los Bagres should be reversed because respondent failed to exhaust her administrative remedies as she did not name Los Bagres in her DFEH complaint. Appellants maintain they did not waive this issue because the failure to exhaust administrative remedies invalidated the trial court's subject matter jurisdiction over Los Bagres. We disagree.

"Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies with DFEH." (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153.) "Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters. [Citation.] Courts have referred to this requirement as a '"jurisdictional prerequisite."'" (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345 (*Kim*).)

While the abovementioned rules are well established, "less clear is what should happen if the issue of exhaustion of administrative remedies is basically ignored until after FEHA claims have been submitted to the fact finder for decision." (*Kim, supra*, 226 Cal.App.4th at p. 1346.) "The courts are currently split over whether a trial court categorically lacks subject matter jurisdiction where the statutory prerequisite that goes unmet is the requirement of exhaustion of claims or the presentation of claims to a public agency." (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 542, fn. 5.)

15

In *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239, footnote 7, our Supreme Court noted that "noncompliance [with claims presentation requirements] does not divest the trial court of subject matter jurisdiction over causes of action against public entities." "In several other contexts, California appellate courts have expressly recognized . . . '[t]he exhaustion doctrine does not implicate subject matter jurisdiction but rather is a "procedural prerequisite" "originally devised for convenience and efficiency" . . . [.] [Citation.] It is "jurisdictional" only in the sense that a court's failure to apply the rule in a situation where the issue has been properly raised can be corrected by the issuance of a writ of prohibition.'" (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 897–898.)

"'[J]urisdictional prerequisite' does not mean subject matter jurisdiction in the context of exhaustion of administrative remedies." (*Kim, supra*, 226 Cal.App.4th at p. 1347.) "'"The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to the nature of any judicial system, some derived from the requirement of due process, some determined by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional."'" (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 134, disapproved of on other grounds in *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 717–718.) "'Although earlier cases tended to view the exhaustion doctrine as invalidating a court's subject matter jurisdiction, thus allowing a defendant to raise it at any time [citations], later cases have generally . . . conclude[d] a

16

defendant waives the defense by failing to timely assert it.'" (*Kim*, *supra*, at p. 1347.)

"If a defendant timely presents the issue of whether a FEHA plaintiff has properly presented all claims to the DFEH, a court must decide the merits of this question. [Citation.] But "'it would be grossly unfair to allow a defendant to ignore this potential procedural defense at a time when facts and memories were fresh and put a plaintiff to the time and expense of a full trial, knowing it could assert the failure to exhaust administrative remedies if it received an adverse [judgment].'"'" (*Kim, supra*, 226 Cal.App.4th at p. 1347.)

We conclude the exhaustion of administrative remedies does not affect the fundamental subject matter jurisdiction of the trial court. We agree with the line of cases holding the exhaustion doctrine is a procedural requirement that was originally implemented for convenience and efficiency. While cases have described the exhaustion doctrine as "jurisdictional," it is only jurisdictional in the sense that a court's failure to apply it can be rectified through an issuance of a writ. The term "jurisdictional prerequisite" in this context does not refer to a court's fundamental authority over a matter, such as its subject matter jurisdiction. Cases holding otherwise have not persuasively demonstrated why a procedural requirement formed for convenience and efficiency should implicate a court's fundamental jurisdiction. A rule allowing a defendant to unfairly disregard the procedural defense and subsequently raise it for the first time on appeal would entirely contravene the rule's original purpose of convenience and efficiency.

Appellants do not dispute they entirely failed to raise this issue before the trial court despite ample opportunity to do so.

Appellants have not persuasively demonstrated why they should be allowed to assert this matter for the first time here. Accordingly, we conclude appellants waived their arguments concerning respondent's failure to exhaust her administrative remedies.

## DISPOSITION

The June 14, 2023 judgment is affirmed. Respondent is awarded her costs on appeal.

CHAVEZ, J.

We concur:

LUI, P. J.

SIGGINS, J.*

---

*       Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.