Filed 3/27/15  Faulk v. City of Citrus Heights CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STEPHAN FAULK, | C072669 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 34200900059016CUPAGDS) |
| CITY OF CITRUS HEIGHTS et al., | |
| Defendants and Respondents. | |

Stephan Faulk sustained injuries when hit by a car while he rode his bicycle across the intersection of Antelope Road and the Interstate 80 westbound off-ramp in Citrus Heights, California.  Faulk obtained a default judgment against Chantel Lee Salas, the driver who hit him.  However, a jury returned a defense verdict on Faulk's claims against the City of Citrus Heights (City); Ikramm Chaudry and Hiru Desai, two employees of the City; De Silva Gates Construction, L.P. (De Silva Gates), the prime contractor of a nearby construction site; and Harris & Associates Inc., the former construction site manager.

1

Faulk appeals the judgment based on the defense verdict. He contends (1) the trial court erred in failing to remove a juror who stated during trial that he had already made up his mind in favor of the defense, and (2) Faulk should have been allowed to introduce into evidence the preliminary construction plans prepared by URS Corporation (URS).

We conclude the trial court did not err in allowing the juror to remain seated after he repeatedly assured the court he would await the close of evidence before making a decision. We also conclude the trial court properly excluded the URS preliminary construction plans because the plans were not implemented and would have tended to confuse jurors. Accordingly, we affirm the judgment.

BACKGROUND

*Factual Background*

This is an appeal by a plaintiff from a defense verdict by the jury. "Accordingly, our summary of the significant facts will cast the evidence in its light most favorable to the judgment, drawing all reasonable inferences and resolving all conflicts in favor of defendants." (*Thompson v. Miller* (2003) 112 Cal.App.4th 327, 330.) Stated in the light most favorable to the judgment, the evidence at trial showed the following:

On May 20, 2009, Faulk was driving a rapidly overheating car on Zenith Drive in Citrus Heights. Faulk got out his bicycle and began to ride through a construction site on the south side of Antelope and Tupelo Drive. De Silva Gates was the prime contractor for the construction, which involved replacing the concrete sidewalk. Antelope Road was reduced to one lane as a result of the construction. Faulk proceeded along the sidewalk of Antelope Road until he arrived at the Interstate 80 westbound off-ramp. At the intersection, Faulk stopped and pressed the cross-walk button. To his left, Salas was in her car and looking to the left, i.e., away from Faulk's direction. When the light changed to allow Faulk to cross, he attempted to get Salas's attention. Faulk thought it was safe to cross the intersection because Salas's car was stationary. Faulk was riding his bicycle across the intersection when Salas suddenly accelerated and hit him. Salas got out and

2

asked if Faulk needed help. Faulk told her: "I felt like I was fine. I didn't think I needed to go to the hospital or anything. I just had some cuts and bruises and stuff like that." Faulk was still able to ride his bicycle and rode off to run his errand.

Defendants called Edward Ruzak, a professional traffic engineer, as a witness. Ruzak testified that a traffic signal controlled the intersection. The timing and signalization conformed to all basic traffic guidelines. Salas could see the traffic signal when she was stopped. A pedestrian light signaled when pedestrians could cross the intersection. In Ruzak's opinion, "there is nothing in terms of the design of the signalization, the timing, that makes this dangerous or unsafe for the users. It's a simple intersection signal lights." Ruzak "put the onus of the cause of the accident on, certainly, [Salas]." The accident "is the cause of [Salas], who did not observe the pedestrian and decided to take the right turn on red. And you have to look, and she did not." Based on nearly 60 years of experience in traffic engineering, Ruzak concluded there was nothing about the nearby construction zone that had any impact on Faulk's accident.

Ricardo Bandeira, a senior project engineer for De Silva Gates, testified that "with the pedestrian detours and the temporary asphalt, pedestrians always had a way to traverse through the construction zone safely." Pedestrians were not forced to walk in the lanes of traffic at the intersection of Tupelo and Antelope Road. Moreover, additional evidence at trial showed the construction zone was 550 feet away from the intersection in which Faulk was hit.

DISCUSSION

**I**

***Allegation of Juror Bias***

Faulk contends juror No. 2 undermined the fairness of the trial by prejudging the case. We disagree.

3

## A.

### *Juror No. 2's Misgivings and Later Reassurances*

On the second day of trial, juror No. 2 informed the trial court: "I don't think I can be fair and impartial. My mind is made up already. I'm sorry to say that. I'm very, very familiar with the area." The trial court declared a recess, and outside the presence of the other jurors, inquired of juror No. 2 as follows:

"Q. [The court]: You're indicating you can't be fair and impartial?

"A. [Juror No. 2]: I have just -- the last day and a half I went home and thought a lot about this and when we took our long break. I just don't feel I can be fair. I thought I could be. But the way things have progressed and the way things have gone, I feel I have already made a judgment inside of me, and that's not fair to the plaintiff."

The court and defense counsel asked juror No. 2 additional questions about whether he could consider all the evidence to be introduced before coming to a decision. Defense counsel expressly inquired whether juror No. 2 could "weigh all the evidence then make your decision." The following colloquy ensued:

"A. [Juror No. 2]: I just -- I can do that. I just wanted to be fair to everybody involved. As I went and left for the long break today, I was fighting this.

"Q. [Defense counsel]: I can understand.

"A.: And I've been sitting here fighting it. And I just want to be fair. That's --

"Q.: That's all . . .

"A.: -- all I am saying. I wanted to be where everyone knew that, where I didn't feel like I'm going to make a decision that I wouldn't feel comfortable with in the end." After additional questions and answers, the trial court addressed juror No. 2 as follows:

"THE COURT: All right. Let me interject here. [Juror No. 2], if you're willing to keep an open mind throughout the remainder of the trial, I'm fine with leaving you on the jury. But if you should reach a point where you feel you cannot be fair and impartial to both sides, then I want you to tell me that.

4

"[Juror No. 2]: I would say that. I think I've been up front about everything I have felt so far. And I just couldn't keep it to myself anymore.

"THE COURT: Okay.

"[Juror No. 2]: Yeah, I mean, I guess I can be fair to the process. I mean that's what this process is for. That's why we have it. I'm proud to serve on a jury. I'm proud to be here.

"THE COURT: We already knew in advance of you being selected that you were familiar with the area so --

"[Juror No. 2]: Yeah.

"THE COURT: You told us that. [¶] But what I want to make certain is that you are open to listening to the entirety of the case before you make up your mind.

"[Juror No. 2]: Yes, I can."

On the third day of testimony, the trial court followed up with juror No. 2 outside the presence of the other jurors as follows:

"THE COURT: Have a seat. Okay. I just wanted to follow-up because I said I would.

"[Juror No. 2]: Yeah. Okay.

"THE COURT: And as far as your keeping an open mind and being fair and impartial, you've had the night to think about it now; do you feel that you could still keep an open mind.

"[Juror No. 2]: I feel I can still keep an open mind. I just feel that the way I was attacked by [the plaintiff] yesterday was inappropriate. I have done nothing to provoke the jury in [any way]. [¶] I haven't talked to anybody in the jury. When I was first interviewed by everybody here, he had the opportunity to dismiss me. And he brought up the thing of how I was -- how did he say it yesterday -- when he made inquiries already once with me and this would be my second incident. [¶] And I just felt that if [the

5

plaintiff] felt that way, he should have returned something back to me the first day and said, no, we don't want you on our jury, instead of throwing it back on me yesterday.

"THE COURT:  Okay.  Well, I just want to make sure that you're not going to hold that against [the plaintiff]?

"[Juror No. 2]:  No, no, no.  Huh-uh.  I just felt that it was inappropriate.

"THE COURT:  Okay. . . .  [¶]  And, really you would not reach any conclusion until you have gone into deliberations and discussed the entirety of the case with the other jurors.

"[Juror No. 2]:  Correct.

"THE COURT:  And do you feel that you can do that?

"[Juror No. 2]:  Oh yeah.  I feel I can do that.

"THE COURT:  Okay.

"[Juror No. 2]:  Especially after last night thinking about it.

"THE COURT:  So you feel stronger in that conviction after last night?

"[Juror No. 2]:  Yes.  Much stronger that I can sit here and be fair and all that to everybody."

After juror No. 2 gave further assurances of his ability to be fair to all the parties, trial resumed.

### B.

### *Right to Impartial Jury*

As the California Supreme Court has stated, " '[t]he right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury.' (*People v. Hughes* [(1961)] 57 Cal.2d 89.)  The guarantee is to *12* impartial jurors." (*Clemens v. Regents of University of Cal.* (1971) 20 Cal.App.3d 356, 360-361.)  Thus, "[f]or a juror to prejudge the case is serious misconduct." (*Id.* at p. 361.)  " 'To find actual bias on the part of an individual juror, the court must find "the existence of a state of mind" with reference to the case or the parties that would prevent the prospective juror

6

"from acting with entire impartiality and without prejudice to the substantial rights of either party." ' " (*People v. Horning* (2004) 34 Cal.4th 871, 896.) A statement such as "I made up my mind during trial" suffices to show the juror has prejudged the case. (*Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 790.)

On conflicting evidence, the question of whether a juror has been shown to have prejudged a case constitutes an issue to be resolved by the trial court. (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108.) If "a prospective juror provides conflicting answers to questions concerning his or her impartiality, the trial court's determination as to that person's true state of mind is binding upon the appellate court." (*People v. Crittenden* (1994) 9 Cal.4th 83, 122.) Thus, we do not second guess credibility determinations by the trial court.

Here, the trial court determined juror No. 2 was able to be impartial by hearing the evidence and deliberating with other jurors before making up his mind about the verdict. Substantial evidence supports the trial court's finding. Although juror No. 2 did express prejudgment of the case, this juror's misgivings appeared to arise out of a deep sense he "just want[ed] to be fair." Upon further questioning by the trial court and defense counsel, juror No. 2 unequivocally stated he could and would be fair to all parties. When the trial court followed up with juror No. 2 on the third day of trial, the juror was certain he could and would be fair to all parties. On this basis, the trial court was entitled to find juror No. 2's assurances of impartiality to be credible. (*People v. Crittenden*, *supra*, 9 Cal.4th at p. 122.) Accordingly, we conclude the trial court did not err in allowing juror No. 2 to remain on the jury.

## II

### *Exclusion of the URS Preliminary Construction Plans*

Faulk next argues the trial court erred by refusing to admit into evidence the preliminary construction plans for the area in proximity to the intersection in which Faulk was injured. We are not persuaded.

## A.

### *The URS Preliminary Construction Plans*

Stewart Hodgkins, an engineer for the City, testified that the project to improve Antelope Road had been originally planned by URS to span both sides of the Interstate 80 freeway. As the planning progressed, the scope of the project was reduced to avoid a right-of-way in favor of CalTrans. Nonetheless, Faulk sought to introduce the URS preliminary construction plans for the Antelope Road improvements.

The trial court excluded the URS preliminary plans as not relevant. As the trial court explained, "those earlier URS plans involved encroaching, if that's the proper term, into the Cal Trans right of way and that the [C]ity, based upon the testimony of the city engineer, decided against moving forward with those initial plans that involved the Cal Trans right of way because of the time constraints and trying to utilize the monies that were made available for the project and because they required some extensive studies, which is a requirement of the state, or Cal Trans. So the URS plans that were involved at those earlier stages were not actually implemented in this handling of the construction project." The trial court further explained that "it is not relevant to introduce the URS plan that was actually not implemented because it didn't involve the Cal Trans right of way."

When Faulk continued to seek introduction of the URS plans, the trial court inquired as follows:

"THE COURT: Tell me how it is relevant. How is a plan that was never implemented because it didn't involve that stretch of the road, Antelope Road, so no one worked with or utilized that URS plan because it -- the project didn't actually start until about 500 feet west of the Cal Trans right of way, how is that relevant?

"[Plaintiff]: The documents depict the thought process of the engineers that designed the project with regards to the Cal Trans off ramp."

8

The trial court was not persuaded and excluded the URS preliminary plans. Moreover, the trial court found that "under Evidence Code section 352 that it would be confusing and misleading to the jury to use that document."

## B.

### *Admissibility of Evidence*

Under Evidence Code section 351, "all relevant evidence is admissible" unless subject to exclusion under another provision of law. " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Although the "trial court 'has broad discretion in determining the relevance of evidence [citations], [it] lacks discretion to admit irrelevant evidence . . . ." (*People v. Weaver* (2001) 26 Cal.4th 876, 933, quoting *People v. Scheid* (1997) 16 Cal.4th 1, 14.) "Evidence is irrelevant . . . if it leads only to speculative inferences." (*People v. Morrison* (2004) 34 Cal.4th 698, 711.)

The trial court also has broad discretion to exclude evidence on grounds it will tend to confuse jurors. "Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Avila* (2006) 38 Cal.4th 491, 587.)

We review a challenge to the exclusion of evidence by the trial court under the abuse of discretion standard of review. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 332.) "The court's ' "discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered." ' [(*People ex rel. Lockyer v. Sun Pacific Farming Co*. (2000) 77 Cal.App.4th 619,] 640.) Even where a trial court improperly excludes evidence, the error does not require reversal of the judgment unless the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) [This means the party challenging the evidentiary ruling] has the burden to demonstrate it

9

is reasonably probable a more favorable result would have been reached absent the error. ([Code Civ. Proc.,] § 475; *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432 (*Tudor Ranches*).)" (*Saxena v. Goffney, supra*, 159 Cal.App.4th at p. 332.)

Here, Faulk did not establish the URS plans to be relevant. Instead, the record shows that the URS plans for the Antelope Road improvements were only preliminary. Not only were the plans preliminary, they ended up being changed for exactly the part of Antelope Road at which Faulk was hit by Salas. Thus, the URS plans would have invited speculation about the nature of construction and any attending dangers at the intersection of Antelope Road and the Interstate 80 off-ramp. Moreover, admission of the preliminary plans would have tended to confuse jurors about the extent of the construction and, concomitantly, the need for a warning sign at the intersection where the accident actually occurred.

Even if the exclusion of the URS preliminary plans would have been error, the error would have been harmless. Faulk was able to introduce the testimony of Larry Wymer, who served as plaintiff's expert on traffic engineering. Wymer testified that there should have been a designated bike path through the construction zone. Wymer further opined that the intersection in which Faulk sustained his injuries was more dangerous than average. However, Wymer did not state a warning sign should have been placed at the intersection. Instead, Wymer only believed "that a detailed analysis, more analysis, should have been done than I see had been done to establish whether a sign should have been put there." Faulk was not entitled to have the jury speculate that a warning sign was necessary on the basis of unimplemented construction plans when his own expert could not say such a warning sign was necessary.

10

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.
(Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                                 HOCH     , J.


We concur:


      RAYE     , P. J.


      ROBIE    , J.