Filed 1/4/16  Magnan v. Ruiz CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MICHAEL MAGNAN, | C074547 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201100269474CUPOSTK) |
| v. | |
| RAFAEL RUIZ, JR., | |
| Defendant and Respondent. | |

A jury found that defendant Rafael Ruiz, Jr., was not negligent but was strictly liable under Civil Code section 3342 for injuries and damages appellant Michael Magnan suffered as a result of being bitten by Ruiz's dog.  The jury apportioned 90 percent of the fault to Magnan and ten percent to Ruiz.

Magnan raises two issues in his appeal:  (1) whether the trial court abused its discretion in excluding "evidence of a prior attack by [Ruiz]'s dog," and (2) whether the

1

trial court erred in instructing the jury on both secondary assumption of risk and comparative negligence. We conclude that any errors were harmless. The jury found Ruiz strictly liable for Magnan's injuries, and it is not reasonably probable that either asserted error would have altered the jury's apportionment of fault.

For these reasons, we affirm.

## I. BACKGROUND

*A. The Bite*

Magnan testified that when Ruiz invited Magnan to Ruiz's house for a meeting, Ruiz did not mention that he had a dog or request that Magnan call before arriving. Ruiz testified to the contrary. Regardless, Magnan did not call before he arrived. He did notice a "Beware of Dog" sign, but did not see a dog in the fenced-in yard. Ruiz and Magnan also offered conflicting testimony as to whether it was necessary to reach over the fence to remove a bolt from the latch in order to open the gate. Either way, Magnan opened the gate and walked to the front door, where he knocked twice but received no answer. He was getting ready to leave when Ruiz's dog appeared and came onto the porch. Magnan explained:

"I knew looking at the dog it came for business. It had bad intentions written on it. It was just looking at me like I messed up somehow. Like why are you here? And from there, I kind of just went into adrenaline mode and do everything I can to look at the dog.

2

"I was trying to almost build a relationship with the dog and say it's okay puppy, it's ok.  Once he got a little closer to me, I got more into a crouched position.  I was getting off the step and that is when the dog lunged at me and got a hold of my arm."

A. *Evidence the Dog had Chased a Mail Carrier*

At trial, Magnan's counsel asked Ruiz if, prior to his dog biting Magnan, he had "ever become aware of any incident involving [his] dog lunging at another person."  Ruiz replied "[y]es," and when Magnan's counsel asked when this occurred, Ruiz's counsel objected to the question on the basis that it called for hearsay and there was no personal knowledge.  The trial court held a hearing on the issue under Evidence Code section 402.  Ruiz testified:

"[Ruiz's Counsel:]  What did your neighbors say to you?

"[Ruiz:]  They told me that my dog had chased after the mailman and that I need to come lock him up.

"[Ruiz's Counsel:]  And so other than what the neighbor told you, did you have any personal knowledge of seeing the dog get out and chase the postman?

"[Ruiz:]  No."

Ruiz never spoke to the mail carrier after the incident.  Magnan's counsel attempted to impeach Ruiz with deposition testimony in which he responded to, "Tell me what you remember about that attack, if anything" with, "I remember that my dad left the gate open and the dog went to the front porch."

Ultimately, Ruiz's counsel agreed that the testimony was not hearsay because it was only offered for notice, but the trial court excluded it as hearsay because there was

3

no other evidence of the chase.  The court found that "Ruiz did not act in conformity with the knowledge [because] . . . acting in conformity with the knowledge would be chaining up [his] dog once [he had] heard that the dog had chased the postman."  The trial court also excluded the testimony under Evidence Code section 352 on the basis that it was more prejudicial than probative, and had already taken up an undue consumption of time.[1]  The court explained, "[I]t will be even more so if I let it in because then I think the defense has the opportunity to put on all this evidence about the citation and about the rabies and that's what it was, and it's just going to take up a lot of extra time."  Further, the court stated, "[L]etting in a statement like that [] could be very prejudicial when we don't have the basis for verifying its probative value.  In a case that is slightly weak on the plaintiff's behalf, it's dangerous."

The jury was instructed that, "concerning whether Mr. Ruiz had any knowledge about a prior incident with this Pit Bull and another person . . . is being stricken from the record, and you are not to consider the questions or the answers for any purpose whatsoever."

B.  *Jury Instructions*

At the close of trial, the court instructed the jury:

"Michael Magnan claims that he was harmed by Rafael Ruiz's negligence.  To establish this claim, Michael Magnan must prove all of the following:  One, that Rafael

---

[1] The trial court had previously denied at least two attempts to exclude this evidence.

Ruiz was negligent; two, that Michael Magnan was harmed; and three, that Rafael Ruiz's negligence was a substantial factor in causing Michael Magnan's harm.

"Negligence is the failure to use reasonable care to prevent harm to one['s] self or to others. A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fail[s] to do something that a reasonably careful person would do in the same situation. Rafael Ruiz claims that Michael Magnan's own negligence contributed to his harm.

"To succeed on this claim, Rafael Ruiz must prove that; [*sic*] one, [] Michael Magnan was negligent; and two, that Michael Magnan's negligence was a substantial factor in causing his harm. If you find that Rafael Ruiz has proven the above, Michael Magnan's damages are reduced by your determination of the percentage of Michael Magnan's responsibility. I will calculate the actual reduction.

"Rafael Ruiz claims that the fault of Michael Magnan also contributed to Michael Magnan's harm. To succeed on this claim, Rafael Ruiz must prove both of the following; [*sic*] one, that Michael Magnan was at fault; and two, that the fault of Michael Magnan was a substantial factor in causing Michael Magnan's harm.

"If you find that the fault of more than one person, including Rafael Ruiz and Michael Magnan, was a substantial factor in causing Michael Magnan's harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent. You will make a separate finding of Michael Magnan's total damages, if any.

"In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

"Rafael Ruiz claims that Michael Magnan assumed the risk of being bitten by Defendant's dog. To succeed in this defense, Rafael Ruiz must prove the following; [*sic*] one, that before entering upon Rafael Ruiz's property, Michael Magnan knew or should have known that the Defendant owned a dog that posed a danger; two, that before entering upon Rafael Ruiz's property, Michael Magnan knew or should have appreciated the danger of being bitten by Defendant's dog; and three, by entering upon Rafael Ruiz's property, Michael Magnan voluntarily accepted the risk that Defendant's dog would bite him.

"Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless he or she knows or should know that the other person will not use reasonable care or will violate the law.

"A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

"Michael Magnan claims that Rafael Ruiz's dog bit him and that Rafael Ruiz is responsible for that harm. People who own dogs can be held responsible for the harm from a dog bite, no matter how carefully they guard or restrain their dogs. To establish this claim, Michael Magnan must prove all of the following; [*sic*] one, that Rafael Ruiz owned a dog; two, that the dog bit Michael Magnan while he was in a public place or

6

lawfully on private property; three, that Michael Magnan was harmed; and four, that Rafael Ruiz's dog was a substantial factor in causing Michael Magnan's harm."

## C. The Jury's Verdict

The jury found that Ruiz was not "negligent in the cause of the incident," but that he was strictly liable for the dog bite because [Ruiz's] dog bit Magnan, Magnan was in a public place or lawfully on Ruiz's property at the time of the bite, and the dog was a substantial factor in causing Magnan's injuries and damages. The jury also found that Magnan was negligent in the cause of his injuries and damages, and that this negligence was a substantial factor in causing his harm. As a result of this finding of comparative fault, the jury was asked to assign percentages of responsibilities to the parties. It found that Magnan was 90 percent responsible and Ruiz was ten percent responsible for the accident. The jury found Magnan suffered $5,000 in damages, but the trial court applied an additur of $48,835 for past medical expenses. Magnan's damages when reduced by his comparative fault totaled $5,383.50. Because Ruiz had previously served a Code of Civil Procedure section 998 offer on Magnan for $50,001, the court awarded Ruiz his costs, resulting in a net judgment in favor of Ruiz of $13,826.43.

## II. DISCUSSION

### A. Standard of Review

Even where a trial court improperly excludes evidence or misdirects the jury, the error does not require reversal of the judgment unless it resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) In either case, the appellant "has the burden to demonstrate it is reasonably probable a more favorable result would have been reached

7

absent the error." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 332; see also Code Civ. Proc., § 475 ["No judgment . . . shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"].)

In assessing prejudice from an erroneous jury instruction, we also consider, "insofar as relevant, '(1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations].' " (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570-571, quoting *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069-1070.)

B. *Evidentiary Objections*

Magnan contends the trial court improperly excluded evidence relating to Ruiz's dog chasing a mail carrier because (1) evidence offered for the limited purpose of establishing Ruiz's knowledge and not the fact that the dog actually did chase the mail carrier is not hearsay, and (2) the evidence's relevance made its exclusion under Evidence Code section 352 a miscarriage of justice.

8

We need not address the merits of trial court's decisions because, even assuming that the trial court erred in excluding evidence that Ruiz's neighbor told him about a previous chase, Magnan cannot establish it is reasonably probable the jury would have reached a more favorable result absent the exclusion of this evidence. Magnan erroneously contends that knowledge of the dog's dangerous propensities was an essential element of his first cause of action for strict liability based on ownership of a domestic animal with dangerous propensities. But his first cause of action was actually for negligence. Thus, his quotations from the model jury instructions for strict liability based on ownership of a domestic animal with dangerous propensities are irrelevant. These instructions were never submitted to the jury. Instead, the jury instructions and special verdict form reflect that Magnan's first cause of action was for negligence. The jury was never instructed that knowledge was an element of any of his claims. Instead, the jury was instructed on strict liability based on Civil Code section 3342, which makes the owner of a dog liable for certain dog bites "regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." And the jury found that Ruiz was strictly liable under this theory.

Therefore, whether evidence relating to Ruiz's knowledge of his dogs propensities could have helped Magnan to prevail on his negligence cause of action actually has no significance on appeal because prevailing on his negligence action would not have entitled him to any additional recovery. Put another way, the jury could have used the finding of strict liability to award Magnan a complete recovery without any apportionment for shared fault. In order to establish that it is reasonably probable a more

9

favorable result would have been reached absent the trial court's evidentiary rulings, Magnan must demonstrate that, if the evidence that Ruiz had previously been told that his dog had chased and lunged at a mail carrier had been admitted for the limited purpose of establishing his knowledge, the jury may have apportioned fault more favorably to Magnan. But the jury heard other, more probative evidence that established that Ruiz was aware that his dog might attack a stranger that showed up in his yard unexpectedly when he was not home. Ruiz verified that he said so himself at his deposition. Ruiz had placed a "Beware of Dog" sign on his front gate in response to visitors coming to his door. Ruiz testified that the dog offered protection and that they lived in a rough area. Ruiz said that he told Magnan about the dog and asked him to call before coming to his house, so that he could tie up his dog. "You think I'm that person that would let someone in my yard and my dog attack them? I wouldn't want my dog to attack anyone." He admitted that, when strangers visited, he locked his dog behind another gate because he was "scared" the dog would attack strangers. The dog was not locked up when Magnan arrived because Ruiz wanted him to "roam the yard for protection." The record contains ample evidence that could support a reasonable inference that Ruiz knew his dog was potentially dangerous.

Under these circumstances, we conclude that Magnan has not established it is reasonably probable a more favorable result would have been reached absent any error in the trial court's evidentiary rulings. The verdict reflects that the jury found Magnan was almost entirely at fault for his own injuries, despite ample evidence that Ruiz knew his dog might attack a stranger. It is doubtful that the additional fact that Ruiz had

previously been told that his dog chased a mail carrier would have changed the jury's apportionment of fault.

*C. Jury Instructions*

Magnan contends that instructing the jury on both comparative fault and secondary assumption of risk "made it seem as if both comparative fault and secondary assumption of risk both act as separate limits on Appellant's liability." Further, Magnan asserts that the fact the jury found Ruiz was not negligent but was strictly liable was "incongruous" and "the only logical conclusion is that the two instructions misled and confused the jury." We disagree.

Again, the jury found that Ruiz was strictly liable for Magnan's injuries, so proving a reversible error would require Magnan to show that, without the disputed jury instruction, it is reasonably probable that the jury would have apportioned fault more favorably to him. He has failed to do so. Magnan asserts no error with respect to the special verdict form or the fact that it asks the jury to make a single apportionment of fault. Nor could he. "In cases involving 'secondary assumption of risk'—where the defendant does owe a duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty—the doctrine is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 315.)

Here, however, the court instructed the jury that assumption of risk is a *defense* rather than a factor in assigning percentages of responsibility. Indeed, the assumption of

11

risk instruction appears *after* the instructions on assigning percentages of responsibility. But secondary assumption of risk is not a complete bar to plaintiff's recovery. (*Knight v. Jewett, supra,* 3 Cal.4th at p. 308.)

Any instructional error, however, was harmless. (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at pp. 570-571.) The order of the jury instructions suggested that assumption of risk was not a defense to strict liability. And because the jury did find that Ruiz was strictly liable for Magnan's injuries and did apportion fault, it was necessarily not misled into thinking that secondary assumption of risk was a complete bar to Magnan's recovery. In fact, there is no indication the assumption of risk instruction impacted the jury's decision at all. The special verdict form asked the jury to make a single apportionment of responsibility and only if they first found that Magnan was negligent in the cause of his injuries and damages, and that his negligence was a substantial factor in causing his harm. Nowhere was the jury asked whether they found that Magnan assumed the risk of being bitten by Ruiz's dog, or given any place to use that conclusion if they agreed with it. Further, neither counsel gave the jury further direction in their closing arguments. The record does not reflect that the jury requested the rereading of any evidence, and the only clarification it sought was regarding "how much [*sic*] negligent Mr. Ruiz needs to be if found negligent in question 1." Thus, Magnan has not demonstrated that, without the disputed jury instruction, it is reasonably probable that the jury would have apportioned fault more favorably to him.

## III.  DISPOSITION

The judgment is affirmed.  Ruiz shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

RAYE, P. J.

/S/

ROBIE, J.