Filed 1/29/26  Wallace v. Karssli Corp. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DOUGLAS WALLACE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KARSSLI CORPORATION,<br><br>    Defendant and Appellant. | H052407<br>(Santa Cruz County<br>Super. Ct. No. 21CV00753) |

Douglas Wallace worked as a delivery driver for Karssli Corporation from March 2019 to March 2020.  After disagreements with management over his job duties and performance, Wallace sued Karssli in March 2021, alleging retaliation in violation of Labor Code sections 1102.5, subdivision (b), and 6310, statutes which protect whistleblowing employees.[1]

Following a trial, a jury returned special verdicts finding Karssli liable under both statutes.  After Wallace waived any damages pursuant to section 6310, the trial court entered judgment in his favor based on the special verdict for section 1102.5, subdivision (b), and awarded him $90,000 in damages.  It later awarded Wallace $173,750 in attorney fees and $19,521 in costs.

Karssli argues on appeal that the special verdict for section 1102.5, subdivision (b), does not support the judgment because the jury did not make a finding that Wallace

---

[1] Undesignated statutory references are to the Labor Code.

reasonably believed Karssli had committed a statutory or regulatory violation, which is essential to support liability under the statute. Karssli also argues that the award of fees and costs must be reversed as a result.

We agree, and therefore reverse. As we explain further below, we will remand to the trial court to determine whether to conduct a retrial on Wallace's section 1102.5, subdivision (b), cause of action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Wallace's employment with Karssli

Karssli Corporation is a delivery company located in Watsonville, which contracts with FedEx to deliver packages within a designated region. Mustafa Karssli is the owner of the company.[2]

Wallace was hired by Karssli as a delivery driver in March 2019. According to Wallace, it was established during his interview that he would only work Monday through Friday—aside from the holiday season—because he had other commitments on the weekends.

Upon being hired, Wallace was trained to drive a specific delivery route in Santa Cruz. After roughly a week and a half of training, Wallace began driving his route and delivering packages Monday through Friday. During the 2019 holiday season, Wallace worked Saturdays as well but returned to his Monday through Friday schedule afterwards.

### B. Disputes between Wallace and Karssli management

According to Wallace, in February 2020, his supervisor Andrew Barry began pressuring him to work on Saturdays so Barry could be relieved of one of his Saturday

---

[2] References to "Karssli" are to the company. We refer to Mustafa Karssli as "Mustafa" or "Mustafa Karssli" to avoid any confusion with the company that is the defendant in this action—no disrespect is intended.

routes. Wallace declined, though, reiterating that he had been hired to work Monday through Friday.

Shortly thereafter, in late February, Wallace encountered difficulties delivering packages to a particular house on his route. When it rained, the road became impassable, and at times there were two dogs on the property that were either unchained, or able to reach the porch, where Wallace was supposed to leave the packages. Wallace testified that the dogs were "running around like crazy" and appeared to be dangerous. Although on occasion Wallace was able to reach the house and safely deliver the packages, in other instances he could not, and he would bring the packages back to Karssli and attempt delivery again the next day.

According to Wallace, it was Karssli policy not to deliver packages if there were loose dogs or other unsafe conditions. In such circumstances, the packages were to be brought back to the Karssli facility.

On one specific occasion in late February when Wallace encountered the dogs and could not deliver the packages to the house, he informed Barry about the incident. Barry informed Wallace that he needed to deliver the packages, notwithstanding Wallace's safety concerns. Wallace did not deliver the packages but instead brought them back to Karssli.

Wallace testified that he again encountered the dogs at the house on March 30, 2020.[3] On this occasion, the "big dog" was loose, so Wallace called Barry and informed him that it was unsafe to deliver the package. Wallace testified that Barry "started getting aggressive and he basically said you need to do what I tell you or else." He interpreted Barry's comment as communicating that "he could probably make it difficult at work and at that point and with his voice that was loud I felt like he could do some harm to me bodily, physically."

[3] Barry testified that he did not believe Wallace ever attempted to make the delivery that day.

3

The two then began exchanging text messages. Wallace described the texts from Barry as aggressive and threatening: "basically in texts he told me I'm your boss [and] if you don't do what I'm telling you to do, I'll write you up." Barry texted: "Stop with the attitude. I'm done with it." An additional text stated: "Remember something, Doug. I'm your boss and if I tell you to do something, do it. If you're unhappy with your job duties or your employment, quit. You are not at liberty to tell us what you will or will not do, and just FYI your schedule will change. You were not hired to work Monday through Friday. You have no contract. Originally, you were hired to work Tuesday through Saturday, and by the way, harassment is what you do to me calling me all the time to complain."

Another text from Barry to Wallace stated: "You don't like your job, walk away. FedEx has nothing to do with this. You're not an employee at FedEx. Get over yourself. If you continue this attitude I will write you up. Continue on, Doug, and see what happens. Stop threatening me because I guarantee you will lose."

Wallace reported the exchange to Mohamad Samer Ajak, a manager at Karssli. He also reported it to Mustafa Karssli, who responded by telling Wallace to "be safe," not to text Barry anymore, and that the two would discuss the matter later.

### C. March 31, 2020, meeting

When Wallace arrived for work the following morning, March 31, 2020, Ajak told him that Mustafa wanted to meet with him. Later that morning, Wallace and Mustafa met, along with Barry, and Ajak. According to Wallace, Mustafa informed him that he needed to "listen to them" and deliver the packages to the porch of the house with the dogs, notwithstanding Wallace's safety concerns.

Mustafa also informed Wallace that his work schedule would henceforth be Tuesday through Saturday, although no reason was provided for the change. Wallace explained that he could not work on Saturdays due to prior commitments. In response, Mustafa said that Wallace would work Tuesday to Friday, thereby working only four

4

days per week and receiving a commensurate reduction in pay. Mustafa testified that the schedule change resulted from a mandate by FedEx that Karssli begin delivering packages seven days a week.

Wallace testified that, following the meeting, Barry said to him: "You know, you need to do what I tell you to do. I'm your boss, Doug." According to Wallace, Barry "got loud," and Wallace said, " 'you don't need to raise your voice with me.' He proceeded to say, well, I'm your boss and I told him to shut up and his response was: meet me down the street. He said that twice to me, meet me down the street. At that point I looked at Mustafa and [Ajak] and I said, 'your employee just threatened me, we're done.' Neither Mustafa nor [Ajak] said anything [] or told him that he couldn't do anything like that. So I walked away. I felt threatened as if something was going to happen to me and neither [Ajak] nor Mustafa was going to stop it."

Wallace testified that he felt threatened and scared for his safety, so he walked away and went home.

The next morning, Ajak texted Wallace at 7:52 a.m. and asked: "Are [you] coming in or not?" Wallace replied: "No. Hostile work environment!" Wallace testified that he did not feel safe going back to work if there was not going to be a resolution, "and nobody reached out to me at all. I felt threatened still."

Ajak responded: "Okay. If you are quitting, bring your uniform and badge and we will process your last paycheck. Thanks." Wallace replied: "I'm not quitting. Hostile workplace." Wallace testified that he never quit his job with Karssli and did not want to quit.

According to Wallace, Ajak asked him to call him and when the two spoke on the phone, Ajak "basically said it's not working out. You're terminated." Wallace testified that he believed he was terminated "for the meeting and the retaliation and that it was easier for them to sweep me under the rug as opposed to investigate it." Ajak testified to

5

the contrary that, despite asking Wallace to call him, Wallace never did so and the two never spoke. Mustafa Karssli testified that, from his perspective, Wallace quit.

## D. Complaint

Wallace filed the complaint against Karssli on March 24, 2021. He initially alleged causes of action for: (1) retaliation in violation of section 1102.5, subdivision (b); (2) retaliation in violation of section 6310; (3) violation of sections 510–515, 1194, and 1198 (unpaid overtime); (4) violation of section 226, subdivision (a) (inaccurate wage statements); (5) violation of sections 200–204 (waiting time penalties); (6) violation of section 226.8 (misclassification); and (7) violation of section 2698 (Private Attorneys General Act).

Karssli issued a general denial, and asserted an affirmative defense of unclean hands, among others.

## E. Trial and jury verdict

The matter proceeded to a three-day jury trial beginning on August 28, 2023.

On the second day of trial, counsel for Wallace revealed to the court and the parties for the first time the existence of a secret recording made by Wallace of the March 31, 2020, meeting between him, Mustafa Karssli, Ajak, and Barry. Although counsel initially offered the recording to impeach Barry's testimony that he never told Wallace to meet him down the street, ultimately counsel elected not to play the recording for the jury, although the jury was informed that such a recording existed. As discussed further below, counsel for Karssli then requested that the recording be played for the jury and relied on it in support of its affirmative defense of unclean hands.

At the conclusion of the evidence, three special verdict forms were submitted to the jury.[4] The first was verdict form 2408 for "constructive discharge in violation of

---

[4] "[A] special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as (continued)

public policy—plaintiff required to endure intolerable conditions for improper purpose that violates public policy." The second was verdict form 4602 for "whistleblower protection—affirmative defense of same decision," for violations of section 1102.5, subdivision (b), and 1102.6.[5] The third was verdict form 4605 for "whistleblower protection—health or safety complaint," pursuant to section 6310.

The jury returned the special verdict forms on August 31, 2023, as follows.

With respect to the first verdict form relating to constructive discharge, the jury found that: (1) Wallace was employed by Karssli; (2) Wallace was subjected to working conditions that violated public policy in that he was treated intolerably in retaliation for having complained about a safety issue, because Karssli wrongfully discriminated against him by forcing him to accept a new work schedule that would result in reduced wages; (3) Karssli intentionally created or knowingly permitted those working conditions; but that (4) those working conditions were not so intolerable that a reasonable person in Wallace's position would have had no reasonable alternative to resign.

The verdict form instructed the jury to stop if it answered "no" to question four. Notwithstanding that instruction, the jury proceeded to answer the remaining questions on the form and fill in the section awarding damages to Wallace. For past economic loss

established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1240 (*Taylor*), quoting Code Civ. Proc., § 624.)

[5] Although not germane to this appeal, section 1102.6 provides: "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (See also *Vatalaro v. County of Sacramento* (2022) 79 Cal.App.5th 367, 379–380 (*Vatalaro*) [section 1102.5 places burden on the plaintiff to establish retaliation; burden then shifts to the employer to make the showing pursuant to section 1102.6].)

(lost earnings), the jury purported to award $44,374, next to which it added a handwritten note stating, "unemployment collected." For other past economic loss, the jury purported to award $90,000.

With respect to the second verdict form relating to whistleblower protection and retaliation claims pursuant to sections 1102.5 and 1102.6, the jury found that: (1) Karssli was Wallace's employer; (2) Wallace disclosed to a person with authority over him, or to an employee with authority to investigate discover, or correct legal violations, that he had been threatened by violence by his manager, Andrew Barry; (3) Karssli discharged Wallace; (4) Wallace's disclosure of information was a contributing factor in Karssli's decision to discharge Wallace; (5) Karssli's conduct was a substantial factor in causing harm to Wallace; and (6) Karssli failed to prove by clear and convincing evidence that it would have discharged Wallace anyway at that time for legitimate, independent reasons. In the damages portion of the verdict form, the jury filled in the same amounts with the same handwritten notations as on the first verdict form.

With respect to the third verdict form relating to whistleblower protection for a health or safety complaint pursuant to section 6310, the jury found that: (1) Wallace was an employee of Karssli; (2) Wallace exercised his right to workplace health or safety; (3) Karssli discharged Wallace; (4) Wallace's exercise of his workplace right to health or safety was a substantial motivating reason for Karssli's decision to discharge him; (5) Wallace was harmed; and (6) Karssli's conduct was a substantial factor in causing Wallace harm. The jury then again filled in the same amounts with the same handwritten notations as on the first verdict form.

8

### F. Post-verdict proceedings: unclean hands defense, verdict viability, judgment
#### (1) Unclean hands defense

Following entry of the special verdicts, but prior to entry of judgment, Karssli requested a bench trial on its affirmative defense of unclean hands.[6] Karssli argued that Wallace's "entire case is grounded in unethical manipulations and perjury," including, among other things: (1) secretly recording the meeting on March 31, 2023; (2) verifying in discovery responses that he had no documents concerning alleged harassment or other employment issues, despite having the secret recording; and (3) asserting for the first time at trial that he was terminated, despite having alleged in the complaint that he "did not quit nor was he terminated," and having asserted in verified discovery responses only that he was constructively terminated. Karssli also argued that there was "a high likelihood that the recording was edited by Plaintiff or counsel, to eliminate portions of that crucial March 31, 2020 conversation in order to render it more favorable to Plaintiff's case," and Karssli offered an expert to analyze the forensics of the recording.

The trial court heard preliminary arguments on the unclean hands defense at a hearing on December 20, 2023, and additional arguments at a subsequent hearing on January 9, 2024.[7] At the conclusion of the arguments, the trial court denied the claim for unclean hands. With respect to the secret recording, the court found that there was no evidence of doctoring or modification, and it declined to re-open discovery.

---

[6] The trial court had apparently decided prior to the jury trial to bifurcate the proceedings and conduct a trial on Karssli's equitable defenses after the jury trial, if necessary. Although the record does not include any such decision by the trial court, it does include subsequent unopposed references to it by the parties.

[7] The record does not include a transcript, minute order, or other documents regarding the December 20, 2023, hearing. However, as discussed below, the judgment recites that it took place. The record does include a transcript of the January 9, 2024, hearing.

In the trial court's minute order entered on January 9, 2024, it stated that it found the unclean hands issue to have been "thoroughly briefed and tried," and it denied Karssli's affirmative defense.

### *(2) Verdict viability*

At the December 20, 2023, hearing, the parties also discussed the "issue of verdict viability regarding the mention of unemployment in Plaintiff's economic damages award." As the trial court subsequently explained at the January 9, 2024, hearing, the verdicts were not "legally appropriate" because the jury had referenced a collateral source of unemployment benefits, "which not only from this Court's perspective would be inappropriate, but it also references a potential number that was not even part of the evidence in this litigation and it was not part of the evidence in this trial." The court concluded that the jury "made a mistake regarding the issue of special damages," and that a "visiting judge unfortunately accepted those verdicts."

The trial court stated that it had presented various options to Wallace at the December 20, 2023, hearing for rectifying the verdict. In response, Wallace submitted a declaration which recited those options: (1) he could choose to waive the economic damages award and proceed with recovery of the noneconomic damages award; (2) the matter could continue to a jury trial on the question of damages only; (3) the matter could continue to a court/bench trial on the matter of damages only; or (4) the parties could stipulate as to the amount of unemployment still in question. Wallace stated in his declaration that he selected the first option, and he "willingly and knowingly consent[ed] to the waiver of the economic damage award presented by the jury on August 31, 2023, in the amount of $44,374.00, and would like to proceed with recovery of only the noneconomic damages award in the amount of $90,000.00."

The trial court's January 9, 2024, minute order thus stated that Wallace "waived the special damage claims as stated on the verdict."

10

### (3) Judgment

Judgment was entered on February 29, 2024. It recited much of the procedural history summarized above and entered judgment in favor of Wallace in the amount of $90,000 for general damages.

### G. Post-judgment motions

Following entry of judgment, Wallace filed a motion for attorney fees and costs on March 7, 2024. The trial court eventually awarded Wallace $173,750 in attorney fees and $19,521 in costs.

Karssli filed a motion to vacate the judgment and a motion for new trial, both of which the trial court denied, on July 8 and July 9, 2024, respectively.

### H. Appeal

Karssli filed its notice of appeal on August 2, 2024, in which it purported to appeal the following judgments and orders: (1) the judgment entered February 29, 2024 (notice of entry of which was entered and served on August 1, 2024) ; (2) the order awarding attorney fees and costs entered on May 14, 2024; (3) the order denying Karssli's motion to vacate the judgment, entered July 8, 2024; and (4) the order denying Karssli's motion for new trial, entered July 9, 2024.

The appeal is timely as to the judgment, pursuant to California Rules of Court, rule 8.108(b) and (c), which extend the time to appeal where a party files a notice of intention to move for a new trial or a motion to vacate the judgment. The appeal is also timely as to the orders denying the motion to vacate the judgment and the motion for new trial, pursuant to California Rules of Court, rule 8.104(a)(1).

With respect to the order awarding attorney fees and costs, the appeal would only be timely if no notice of entry of order—or filed-endorsed copy of the order showing the date of service—were ever served. (Cal. Rules of Court, rule 8.104(a)(1).) The record here does not include any such notice of entry of order or proof of service—accordingly, we presume none was served and that the appeal was timely, pursuant to California Rules

11

of Court, rule 8.104(a)(1)(C), which provides that, in the absence of a notice of entry or proof of service, the deadline is 180 days after entry of the appealable order. (See, e.g., *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1456 ["Because the record on appeal does not contain a document showing when, or if, a notice of entry (or file-stamped copy) of the order was mailed by the court clerk to Sharon, or served by Annette on Sharon, we presume the applicable appeal period, absent a rule extending that period, is the 180–day period under [former rule 8.104(a)(1)(C)"].)

Here, the order awarding fees was entered on May 14, 2024, and the notice of appeal was filed on August 1, 2024. Wallace does not contend that the appeal was untimely in any respect.[8]

## II. Discussion

Karssli argues that the special verdict failed to make a necessary finding to impose liability under section 1102.5, subdivision (b)—specifically, that Wallace reasonably believed Karssli had violated some rule, regulation, or statute. As a result, Karssli argues that the judgment is not supported by the special verdict and must be reversed.

Karssli also argues in the alternative that the trial court's refusal to conduct a bench trial on its unclean hands defense violated due process and warrants reversal and remand for a trial on that issue.

Because the judgment must be reversed, Karssli argues, the order awarding attorney fees and costs must be reversed as well.

---

[8] In any event, "even when there is no appeal of a postjudgment order awarding attorney fees to the prevailing party, and the award has become final, the appellate court's *reversal* of the judgment on the merits extinguishes the order on fees. The successful party is never required to pay the unsuccessful party's costs." (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 613, citation omitted.)

### A. *Standard of review*

We analyze a special verdict form de novo. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325 (*Saxena*), citing *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 678 (*D.R. Horton*) [special verdict's correctness must be analyzed as a matter of law].) "A 'special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law.' " (*Saxena, supra*, at p. 325, quoting Code Civ. Proc., § 624.)

"The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings....' " (*Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 855, citation omitted; see also *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960 (*Myers*).)

"A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Saxena, supra*, 159 Cal.App.4th at p. 325, citing *Fuller–Austin Insulation Co. v. Highlands Ins. Co.* (2006) 135 Cal.App.4th 958, 1005–1006 (*Fuller-Austin*).) Critically, "[w]hen a fact necessary to support a cause of action is not included in such a special verdict, 'judgment on that cause of action cannot stand.' " (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 531 (*Behr*), citing *Saxena, supra,* at pp. 325–327.)

When a special verdict is used, the reviewing court will not imply findings in favor of the prevailing party. (*Behr, supra*, 193 Cal.App.4th at p. 531, citing *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285 (*Trujillo*).)

### B. Whistleblower protection in section 1102.5

Our Legislature "has built a 'powerful network' of 'whistle-blower protection laws ... available to those who seek to expose wrongdoing.' " (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 37, quoting *Garcetti v. Ceballos* (2006) 547 U.S. 410, 425.) One of those laws is section 1102.5, which provides whistleblower protection to employees. (*Brown, supra*, at p. 37, citing *Lawson v. PPG Architectural Finishes*, *Inc.* (2022) 12 Cal.5th 703, 709.)

Section 1102.5 protects employees by establishing three prohibitions. First, subdivision (a) precludes an employer from adopting or enforcing any rule, regulation, or policy that prevents an employee from either disclosing information to the government—or to a person with authority over the employee or to another employee with the authority to investigate, discover, or correct the violation—or from providing information or testifying before a public body conducting an investigation, where the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute or a local, state, or federal rule or regulation. (§ 1102.5, subd. (a).)

Second, subdivision (b) precludes an employer from retaliating against an employee for disclosing information, or because the employer believes the employee disclosed or may disclose information, to the government—or to a person with authority over the employee or to another employee with the authority to investigate, discover, or correct the violation—or for providing information or testifying before a public body conducting an investigation, where the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute or a local, state, or federal rule or regulation. (§ 1102.5, subd. (b).)

Third, subdivision (c) precludes an employer from retaliating against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute or a local, state, or federal rule or regulation.[9] (§ 1102.5, subd. (c).)

We are concerned here with subdivision (b).[10] Although the second verdict form referred only to section 1102.5, without reference to a particular subdivision, the questions presented to the jury asked whether Wallace disclosed information to a person with authority over him, or to an employee with authority to investigate, discover, or correct legal violations, and whether Karssli discharged Wallace because of that disclosure. By contrast, the verdict form did not ask the jury to determine whether Karssli had enacted or enforced any policy, rule, or regulation, or whether Wallace had refused to participate in an activity, as set forth in subdivisions (a) and (c) of section 1102.5.

## C. Waiver

Wallace argues that any defect in the special verdict form was waived because Karssli failed to object to it below and even approved it as to form. As support, he cites *D.R. Horton, supra*, 126 Cal.App.4th p. 682 and *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112 (*Jensen*).

---

[9] Subdivision (d) of section 1102.5 also precludes an employer from retaliating against an employee for having exercised, in any former employment, any of the rights protected by subdivisions (a), (b), or (c). (§ 1102.5, subd. (d).)

[10] Section 1102.5, subdivision (b), provides in full: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

However, these cases are inapposite. In *Jensen*, the defendant argued that the special verdict should have included the question, " 'Did defendant violate the Song–Beverly Warranty Act?' ", whereas it instead asked, " 'Do you find that defendant BMW of North America, Inc., willfully failed to meet its obligations under the Song–Beverly Warranty Act?' " (*Jensen, supra*, 35 Cal.App.4th at pp. 130–131.) The court of appeal held that the defendant had waived any objection to the special verdict form by failing to object before the jury was discharged. (*Jensen, supra*, at p. 131, citing *Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456, fn. 2.)

Here, though, Karssli is not challenging the form of the special verdict. Instead, it is arguing that the special verdict form submitted to and returned by the jury does not include a factual finding necessary to support the section 1102.5, subdivision (b), cause of action, and therefore does not support entry of judgment on that theory.

In such circumstances, the waiver rules discussed in *Jensen* do not apply. *Behr* is illustrative. In that case, the plaintiff sued the defendant for the tortious transmission of genital herpes; the jury returned a special verdict in the plaintiff's favor, awarding her compensatory damages. (*Behr, supra*, 193 Cal.App.4th at p. 521.) The defendant argued on appeal that the special verdict was defective in multiple ways, including that it failed to make findings as to the timing of the plaintiff's infection, and that it failed to find the existence of a special relationship between the parties for purposes of establishing plaintiff's cause of action for fraud by misrepresentation. (*Id*. at p. 521.)

With respect to the first of those arguments, the court held that the defendant had waived any argument that the special verdict was defective in that regard, noting the "well-settled" rules that if the verdict is ambiguous, " ' "the party adversely affected should request a more formal and certain verdict. Then, if the trial judge has any doubts on the subject, he may send the jury out, under proper instructions, to correct the informal or insufficient verdict." [Citations.]' " (*Behr, supra,* 193 Cal.App.4th at p. 530.) "A party who fails to object to a special verdict form ordinarily waives any objection to the

16

form." (*Ibid*., citing *Lynch v. Birdwell* (1955) 44 Cal.2d 839, 851; *Jensen, supra,* 35 Cal.App.4th at p. 131.)

Because the defendant had not objected to the fact that the special verdict form omitted any question about the timing of the infection, he had waived the objection. (*Behr, supra*, 193 Cal.App.4th at p. 530.)  Although it had been the plaintiff's responsibility to have the verdict form submitted to the jury on her case, it was the defendant "who believed that the timing of the infection was important to determining liability or the absence thereof. It was thus incumbent on him to see that findings regarding the timing of the infection were included in the verdict." (*Id*. at p. 530, citing *Moore v. Preventive Medicine Medical Group, Inc.* (1986) 178 Cal.App.3d 728, 746.)

However, with respect to the defendant's second argument—that the special verdict form failed to find the existence of a special relationship between the parties for purposes of establishing the plaintiff's fraud by misrepresentation claim—the court held that "the waiver rules discussed in the preceding part do not apply here." (*Behr, supra*, 193 Cal.App.4th at p. 531.)  The court clarified that the failure altogether to include any finding on the fact of misrepresentation was "not an ambiguity that needed clarification; it is simply the absence of a factual finding necessary to support a cause of action." (*Ibid*.)  The defendant was not challenging the form of special verdict, but rather was arguing that the verdict form submitted by the plaintiff and returned by the jury did not support entry of judgment on that particular cause of action.  (*Ibid*., citing *Saxena, supra,* 159 Cal.App.4th at p. 327.)

The court also emphasized that the plaintiff had the responsibility for submitting a verdict form sufficient to support her causes of action:  "[i]f she chose not to include a proposed factual finding essential to one of her claims, it is not incumbent on Redmond, as the defendant, to make sure the omission is cured." (*Behr, supra*, at 193 Cal.App.4th pp. 531–532.)

Again, Karssli is not objecting to the form of the special verdict. Instead, it is arguing, as in *Behr*, that the jury's verdict did not contain an essential finding of fact to support judgment on this cause of action. Indeed, there would have been no reason for Karssli to object to the special verdict form if that form could not establish Karssli's liability under the statute.

Karssli has not waived this argument. We address the merits of the argument in the following section.[11]

### D. The special verdict does not support the judgment because it omitted an essential finding for liability under section 1102, subdivision (b)

As set forth above, liability under section 1102.5, subdivision (b), requires a finding that the employee had "reasonable cause to believe" that the disclosed information revealed a violation of state or federal statute or local, state, or federal rule or regulation.[12] (§1102., subd. (b).) This is a "requirement" for liability under the statute. (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 731 [section 1102.5, subdivision (b) "does not protect employees who do not believe or who unreasonably believe that the information they are disclosing shows a violation of the law"]; see also, *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 593 [statute "requires only that an employee disclose information and that the employee reasonably

---

[11] The other case relied on by Wallace—*D.R. Horton*—is inapposite as well. In that case, the court held only that a special verdict's findings "must be internally consistent and logical," and it rejected an argument that the defendant had invited the alleged error in the verdict. (*D.R. Horton, supra*, 126 Cal.App.4th at p. 681.) But the case did not consider an argument that the verdict omitted an essential factual finding necessary to support judgment on a particular cause of action.

[12] We note preliminarily that the law currently appears somewhat unsettled with respect to whether the relevant statutory language—"reasonable cause to believe"—is the equivalent of "reasonably believing," language that many courts have used when addressing section 1102.5, subdivision (b). (See, e.g., *Vatalaro, supra,* 79 Cal.App.5th at pp. 380–383.) We need not resolve this dispute here because the special verdict form did not make either determination—that Wallace had "reasonable cause to believe," or that he "reasonably believed" his disclosure revealed a violation.

believe the information discloses unlawful activity"]; *Siri v. Sutter Home Winery, Inc.* (2019) 31 Cal.App.5th 598, 605 ["[p]laintiff's right to recover turns only on whether she was discharged for communicating her reasonable belief that defendant was not properly reporting its use tax obligation"]; *Vatalaro, supra,* 79 Cal.App.5th at pp. 380–383.)

In short, a factual finding that an employee had reasonable cause to believe that the disclosed information revealed unlawful activity is necessary to support a cause of action pursuant to section 1102.5, subdivision (b).

And, as set forth above, when a fact necessary to support a cause of action is not included in a special verdict, judgment on that cause of action cannot stand. (*Behr, supra,* 193 Cal.App.4th at p. 531; *Saxena, supra*, 159 Cal.App.4th at pp. 325–326 [special verdict was "fatally defective" because it did not require the jury to answer whether defendant performed a medical procedure with "no consent" at all; essential element of battery claim was therefore absent]; see also *Myers, supra,* 13 Cal.App.4th 949 [special verdict reversed because it omitted any finding on any cause of action that could support award of punitive damages]; *Fuller-Austin, supra,* 135 Cal.App.4th 958 [fatally defective special verdict failed to include finding on reasonableness necessary to support liability].)

Wallace has not argued that the special verdict here did include a finding on his reasonable belief, or that such a finding was not essential to support liability under section 1102.5, subdivision (b). Instead, he argues only that "the jury's findings are supported by substantial evidence." As we have explained, though, the jury did not make any finding regarding whether Wallace had reasonable cause to believe that his disclosure revealed unlawful activity; accordingly, there is no such finding for which there could be substantial evidence.

Wallace also argues that "the record contains substantial evidence that [he] had a reasonable belief that safety violations and workplace hazards were occurring, and that he made protected complaints." He then summarizes evidence in the record he contends

19

would support a finding that he had such a reasonable belief, and contends that this court "must view the evidence in the light most favorable to the verdict, resolving all conflicts and drawing all reasonable inferences in support of the judgment."

Wallace sets forth the incorrect standard of review, though. As we have stated, we analyze a special verdict form de novo. (*Saxena, supra,* 159 Cal.App.4th at p. 325; *D.R. Horton, supra,* 126 Cal.App.4th at p. 678 [special verdict's correctness must be analyzed as a matter of law].) Moreover, when a special verdict is used, a reviewing court does not imply findings in favor of the prevailing party. (*Trujillo, supra,* 63 Cal.App.4th at p. 285; *Behr, supra,* 193 Cal.App.4th at p. 531.)

### E. Harmless error

A defective special verdict can be subject to harmless error analysis. (*E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1287; *Taylor, supra,* 222 Cal.App.4th at p. 1244.) "The error is harmless if 'under the pleadings and evidence[,] the same result would have been reached even if the error had not been committed.' " (*Ibid.*; see also Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

The miscarriage of justice here is self-evident—judgment was entered in Wallace's favor on a cause of action for which a requisite finding establishing liability was never made. Stated differently, the error Karssli has established here was not with the special verdict form itself—rather, it was the judgment in Wallace's favor on the section 1102.5, subdivision (b), cause of action. Thus, "it is reasonably probable that a result more favorable to the [appellant] would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Had the error here not occurred,

judgment on that cause of action would not have been entered in Wallace's favor, which is a more favorable result.

From that standpoint, *Taylor* is distinct. In *Taylor*, the special verdict form contained a typographical error that resulted in the jury skipping over two questions which it needed to answer in the affirmative to establish a cause of action for hostile work environment. (*Taylor, supra*, 222 Cal.App.4th at p. 1240.) The court evaluated the evidence in the record and the jury's other findings and concluded that, in the absence of the typographical error, the jury would have answered "yes" to both questions. (*Id*. at p. 1246.) For that reason, it held: "It is not reasonably probable that appellant would prevail at a new trial on the two questions inadvertently omitted from the jury's consideration. We follow the constitutional mandate to reverse only when we are of the opinion that there has been a miscarriage of justice. No miscarriage of justice occurred here." (*Id*. at p. 1246.)

Here, by contrast, the error was not a typographical error and was not the special verdict form itself—it was the judgment that followed. Correction of that error requires a reversal of the judgment. (*Behr, supra*, 193 Cal.App.4th at pp. 538–539 [reversing judgment as to the cause of action for fraud by misrepresentation, while affirming it in all other respects].) As the court in *Taylor* acknowledged, its facts were distinct from those in *Behr*: "Unlike the plaintiff in *Behr,* respondent did not make a choice 'not to include a proposed factual finding essential to one of [his] claims.' " (*Taylor, supra,* 222 Cal.App.4th at p. 1244, citing *Behr, supra,* at pp. 531–532.) Whereas in *Behr*, "both parties and the trial court agreed on a correct verdict form," the error in the verdict form in *Taylor* was an inadvertent typo. (*Taylor, supra*, 222 Cal.App.4th at p. 1244.)

The error here—judgment in Wallace's favor on the section 1102.5, subdivision (b), cause of action, despite the jury's failure to make all necessary findings to support that judgment—constituted a miscarriage of justice.

21

### F. *The judgment and attorney fees order must be reversed*

As summarized above, the trial court determined that the special verdicts returned by the jury were not "legally appropriate," as the jury had "made a mistake regarding the issue of special damages." Ultimately, Wallace waived the $44,374 economic damages awarded pursuant to section 6310 and elected to proceed with recovery of the $90,000 noneconomic damages awarded pursuant to section 1102.5, subdivision (b).[13]

Damages under section 6310 "are limited to 'lost wages and work benefits caused by the acts of the employer.' " (*Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39, 44, quoting § 6310, subd. (b).) In other words, only economic damages, but not non-economic damages, are available under a section 6310 claim.

Following Wallace's waiver of the section 6310 damages, judgment was entered in his favor for the $90,000 awarded pursuant to section 1102.5, subdivision (b). Wallace concedes on appeal that the judgment was predicated solely on the special verdict pursuant to section 1102.5, subdivision (b), and not on the special verdict pursuant to section 6310: "The record demonstrates that Respondent voluntarily waived any special damages potentially linked to § 6310 or collateral source issues, and that the final judgment was entered exclusively under § 1102.5."

Accordingly, no aspect of the judgment remains, and it must be reversed in its entirety.[14]

---

[13] Economic damages consist of "objectively verifiable monetary losses including medical expenses, loss of earnings, ... loss of employment and loss of business or employment opportunities." (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 752, citations omitted.) Non-economic damages are "subjective, non-monetary losses [such as] pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (*Ibid.*)

[14] Because we reverse the judgment on this ground, we need not reach Karssli's alternative argument regarding its unclean hands affirmative defense. As explained in the following section, the issue may be rendered moot by subsequent proceedings following remand.

The order awarding attorney fees and costs to Wallace must be reversed as well, because it is predicated on the underlying judgment. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284, citing *Merced County Taxpayers' Association v. Cardella* (1990) 218 Cal.App.3d 396, 402; *Purdy v. Johnson* (1929) 100 Cal.App. 416, 421.)

### G. Remand

Following oral argument in this appeal, we requested supplemental briefing on two questions: "(1) Assuming, arguendo, that this court were to reverse the judgment as to respondent's Labor Code section 1102.5 cause of action because the special verdict did not support entry of judgment in respondent's favor on that cause of action, should this court remand with directions to the trial court to enter a new judgment in appellant's favor on that cause of action, or with directions for a retrial on that cause of action? (See [*Saxena, supra,* 159 Cal.App.4th at p. 329; *Myers, supra*, 13 Cal.App.4th at p. 960, fn. 8.])"; and "(2) The invited error doctrine generally prevents a party from taking advantage of an error that its conduct induced. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212.) In addition, the waiver doctrine generally prevents a party from taking advantage of an error that could have been corrected earlier if brought to the trial court's attention. (*Doers v. Golden Gate Bridge etc. Dist*. (1979) 23 Cal.3d 180, 184–185, fn. 1.) Is either doctrine applicable here-either with respect to a possible retrial on respondent's Labor Code section 1102.5 cause of action, or to appellant's arguments for reversal on appeal-based on how the special verdict form for this cause of action was prepared, submitted, and approved in this case?"

In response, Karssli argues: "The record on appeal is sparse as to the preparation, submittal and approval of the Special Verdict. There is nothing in the record showing how or why [Wallace] prepared VF-4602 without including Question No. 3 of this Judicial Council form, the error at issue here." Karssli further asserts that "VF-4602 and VF-4605 were propounded by Respondent, and VF-2408 by Appellant," although the

portions of the reporter's transcript Karssli cites do not demonstrate one way or the other which party prepared the special verdict forms.

And, Karssli notes that immediately before the jury began its deliberations, counsel for both parties expressly approved the special verdict forms that were presented to the jury: "THE COURT: 'Anything further regarding the verdict forms?' [¶] [WALLACE'S COUNSEL]: 'Not from plaintiff.' [¶] THE COURT: 'They meet with the approval of plaintiff; correct?' [¶] [WALLACE'S COUNSEL]: 'Correct.' [¶] 'Anything further regarding the verdict forms, [Karssli's counsel]?' [¶] [KARSSLI'S COUNSEL]: 'No.' [¶] THE COURT: 'They meet with the approval of the defense; correct?' [¶] [KARSSLI'S COUNSEL]: 'Yes.' "

Wallace contends in his supplemental brief that he submitted the "correct" special verdict form for his section 1102.5 cause of action, which included a question asking: "Did Douglas Wallace have reasonable cause to believe that participation in delivering the package to an unsafe location would result in a violation of local safety rules?" According to Wallace, the correct special verdict form was filed on August 28, 2023, and he moves this court to augment the appellate record to include that form.

However, the form attached as an exhibit to his motion is not file-stamped— instead, it is stamped "electronically received" on August 28, 2023. Thus, although we grant the motion to augment the record with the electronically received special verdict form, Wallace has failed to cite any evidence, or offer any theory, as to how or why the form ultimately submitted to the jury did not include the omitted question. In fact, he acknowledges that "[t]he record is devoid of any showing as to why this verdict form was submitted to the jury."

In short, the record on appeal is silent as to how the special verdict form for Wallace's section 1102.5 cause of action was prepared and submitted. Although counsel for both parties approved the final special verdict forms before they were submitted to the

jury, we do not know what transpired before that. Our task, then, is to determine the appropriate directions for remand to the trial court.

Courts have taken varying approaches in similar circumstances. In the cases cited in the request for supplemental briefing and discussed earlier in this opinion, for instance, the courts reversed the judgments and remanded with directions to enter new judgments in favor of the defendants on the applicable causes of action—that is, the courts did not remand for retrials. (*See, e.g., Saxena, supra*, 159 Cal.App.4th at pp. 335–336; *Behr, supra*, 193 Cal.App.4th at pp. 538–539; *Myers, supra,* 13 Cal.App.4th at p. 960, fn. 8.) In those cases, however, there was no uncertainty as to what had transpired in the trial court with respect to the special verdict forms. Moreover, the records in those cases showed that the plaintiffs had contributed to, or invited, the error in some fashion, either by preparing or submitting the insufficient special verdict form or by opposing the defendant's attempts to seek clarity on it. (*Ibid*.)

In other cases, courts have elected to remand with directions to conduct a retrial, or for further considerations as to whether to conduct a retrial. (*See, e.g., Fuller-Austin, supra*, 135 Cal.App.4th at p. 1007 [retrial ordered on remand where special verdict form did not permit jury to resolve controverted issue of reasonableness]; *Vanderpol v. Starr* (2011) 194 Cal.App.4th 385, 396–397 [new trial ordered on remand where special verdict form omitted necessary question regarding plaintiff's use or enjoyment of property]; *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 134–136 [after reversing judgment based on fatally inconsistent special verdicts, court also addressed adequacy of third special verdict "because there might be a retrial," and found it defective because it omitted an essential element].)

Because it remains unclear to this court what transpired below with respect to how the special verdict forms were prepared and submitted, we decline to remand with directions to enter judgment for Karssli or to conduct a retrial. Instead, we remand with directions to the trial court to consider whether to conduct a retrial on Wallace's section

25

1102.5 cause of action. Considering the state of the appellate record, the trial court is likely in a better position to ascertain what transpired below and to determine the appropriate scope of subsequent proceedings, including the relevance of Karssli's affirmative defense of unclean hands.

### III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to consider whether to conduct a retrial on Wallace's Labor Code section 1102.5 cause of action only, and to determine the appropriate scope of any subsequent proceedings. Karssli is entitled to its costs on appeal.

_____
Wilson, J.


WE CONCUR:




_____
Danner, Acting P. J.




_____
Bromberg, J.




*Wallace v. Karssli Corporation*
H052407